## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHAD DURAN COCKERHAM**<br>*Plaintiff* | **CIVIL ACTION** |
| **VERSUS** | **NO.** |
| **CITY OF NEW ORLEANS,**<br>**ANNE E. KIRKPATRICK, individually and**<br>**in her official capacity as Superintendent of the**<br>**New Orleans Police Department,**<br>**NEW ORLEANS POLICE DEPARTMENT,**<br>**CHARLES "SKIP" GALLAGHER**<br>**and JOHN DOES 1–10**<br>*Defendants* | **SECTION:** |

## <u>COMPLAINT FOR DAMAGES</u>

**NOW INTO COURT,** through undersigned counsel, comes **Plaintiff Chad Duran Cockerham ("Cockerham")**, who files this Complaint for Damages against the above-named Defendants and alleges as follows:

## I. INTRODUCTION

1. This civil rights action arises from a pattern of baseless retaliatory investigations, procedural violations, and abuse of disciplinary authority directed at Plaintiff Cockerham, a seventeen-year veteran detective of the New Orleans Police Department ("NOPD").

2. Plaintiff Cockerham has been subjected to repeated and unlawful investigations concerning alleged payroll fraud and alleged dishonesty, despite the absence of credible evidence of criminal wrongdoing. *(See Ex. A, Initial Complaint Brief Synopsis)*

3. These investigations were initiated and directed by Defendant Anne E. Kirkpatrick ("Kirkpatrick"), Superintendent of NOPD.

1

4. The City of New Orleans ("City") was an active participant in repeated and unlawful investigations concerning alleged payroll fraud and alleged dishonesty, despite the absence of credible evidence of criminal wrongdoing.

5. The conduct described herein violated Plaintiff Cockerham's rights under the First and Fourteenth Amendments to the United States Constitution, the Louisiana Police Officer Bill of Rights, and well-established principles of due process.

## II. PARTIES

6. Plaintiff Cockerham is an individual and a citizen of the State of Louisiana, residing in Ascension Parish. At all times pertinent hereto, he was employed as a Detective with NOPD.

7. Defendant City is a municipal corporation and political subdivision of the State of Louisiana, with its principal place of business located at 1300 Perdido Street, New Orleans, Louisiana 70112. At all relevant times herein, the City was responsible for the operation of NOPD. The Agent for Service of Process is Charline K. Gipson, City Attorney of New Orleans, 1300 Perdido Street, Suite 5E03 (Law Department), New Orleans, Louisiana 70112.

8. Defendant NOPD is a department of the municipality, generally named as City, through NOPD (See above Paragraph 7). At all relevant times herein, NOPD was responsible for law enforcement operations within the City. The Agent for Service of Process is Charline K. Gipson, City Attorney of New Orleans, 1300 Perdido Street, Suite 5E03 (Law Department), New Orleans, Louisiana 70112.

9. Defendant Kirkpatrick, an individual and citizen of the State of Louisiana, who serves as Superintendent of NOPD and acts under color within the course and scope of her

2

employment with Defendant City, along with other employees of the Defendant City, at all relevant times.

10. Defendant Charles "Skip" Gallagher is an individual and citizen of the State of Louisiana, with the capacity to sue and be sued. He is to be served personally at 111 Wood Avenue, Metairie, Louisiana 70005.

11. Defendants John Does 1–10 are individuals whose identities are currently unknown, but who participated in the unconstitutional conduct described herein.

## III. JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, as this action arises under the Constitution and laws of the United States.

13. This action is brought pursuant to 42 U.S.C. §1983.

14. This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. §1367.

15. Venue is proper in this Court because the events giving rise to this action occurred within the Eastern District of Louisiana.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Defendants' Conduct

16. At all relevant times hereto, Plaintiff Cockerham served as a detective with NOPD and participated in numerous criminal investigations during his career. *(See Ex. B, Documentation from FBI listing assigned cases)*

3

17. Plaintiff Cockerham developed a reputation as a competent and effective law enforcement officer. *(See Ex. C in globo, 2022 and 2023 Evaluations; Email from Rafael Goyeneche to Shaun Ferguson)*

18. Plaintiff Cockerham was also assigned to cooperative law enforcement operations with federal agencies, *i.e. the Federal Bureau of Investigations ("FBI").* He had received numerous accolades and commendations for stellar work performance including being named Officer of the Year, prior to the events described in this Complaint.

19. At all relevant times hereto, Defendant Kirkpatrick, along with other NOPD officers, were the Defendant City's employees responsible for the police investigations that led to Plaintiff Cockerham's unlawful treatment. *(See Ex. D, Investigations under control numbers 2024-0380-P, 2024-0446-P, and 2025-0373-R)*

20. Defendant Kirkpatrick in her individual capacity, acted in a manner that deprived Plaintiff Cockerham of constitutionally protected property interests and deprived him of procedural due process of law. Defendant Kirkpatrick further acted in a manner that was deliberately indifferent, wanton and willful and which reflected a reckless disregard for Plaintiff Cockerham's rights and well-being. *(See Ex. E, July 30, 2025, Fox 8 Article of Kirkpatrick news conference regarding hours)*

21. Defendant Kirkpatrick has engaged in a pattern of conduct that was deliberately indifferent, wanton and willful and which reflected a reckless disregard for other Detectives' rights and well-being. *(See Ex. F, Amended Complaint filed in Jay P. Mehring versus City of Spokane, Superior Court, State of Washington, County of Spokane, No. 09-2-05647-6; Ex. G, Judgment rendered in Jay P. Mehring versus City*

4

*of Spokane, Superior Court, State of Washington, County of Spokane, No. 09-2-05647-6).*

**B. Initiation of Investigations**

22. In April 2024, Anne Breaux captured a picture of Mayor Latoya Cantrell and her security detail guard, Jeffrey Vappie, dining in the French Quarter. The photo was provided to media members, and a story aired on the local Fox 8 News. As a result of the story, Mayor Cantrell filed a police report and then a temporary restraining in order against Ms. Breaux. Plaintiff Cockerham had nothing to do with this issue, but it would become an issue for him within NOPD/City.

23. In late April 2024, Deputy Chief Lawrence Dupree copied Plaintiff Cockerham on an email about threats against Mayor Cantrell and her family via text messages. In this email, Chief Dupree requested that Plaintiff Cockerham identify the source of the threat. Plaintiff Cockerham determined the source of the threats was in the State of California. Due to the email's sensitivity, Plaintiff Cockerham responded to the email thread via his FBI email and copied representatives of NOPD. *(See Ex. H, Email from Lawrence Dupree dated May 10, 2024)*

24. In June 2024, Plaintiff Cockerham was alerted by City Hall of a public records request seeking all emails between him and Mayor Cantrell, as well as members of the Mayor's staff. The request encompassed the period of the photos of Mayor Cantrell and Officer Jeffrey Vappie until the police report/temporary restraining order was filed. Plaintiff Cockerham believed someone at NOPD advised the requestor (Fox 8) of the public records request that Plaintiff Cockerham provided the Mayor with the essential information needed to file the temporary restraining order against Anne Breaux.

However, the person identified in California had no affiliation with Anne Breaux. *(See Ex. I, Public records request)*

25. On July 2, 2024, Plaintiff Cockerham was contacted by the Orleans Parish District Attorney's Office alerting him to a post that was made on the social media application "Reddit". The post discussed details of hours worked by Plaintiff Cockerham and money earned in the previous year. It alleged Plaintiff Cockerham utilized his FBI position to gather information on picture takers in the French Quarter (Anne Breaux). The post said: "I wonder what else he has done for the wicked witch of the Pontalba." Based on the post's contents, Plaintiff Cockerham inferred this was someone with connections to Anne Breaux. *(See Ex. I, Public records request with Reddit attachment)*

26. On July 5, 2024, Plaintiff Cockerham was alerted to another public records request requesting all emails for Detective Cockerham during April 2024. The requester was Justin Schmidt (Anne Breaux's attorney). Again, this suggested that someone at NOPD provided his name as the person who provided Mayor Cantrell with the information to file the temporary restraining order. Plaintiff Cockerham never interacted with Anne Breaux or Justin Schmidt. In addition, the person identified in the investigation Plaintiff Cockerham completed concerning the threats was not Anne Breaux, nor was the person who threatened Mayor Cantrell and her family affiliated with Anne Breaux. *(See Ex. I, Public records request)*

27. On July 12, 2024, Plaintiff Cockerham was notified of a complaint lodged against him by the Office of Independent Police Monitor ("OIPM"). This was a very strange complaint because Plaintiff Cockerham does not interact with the public in an official NOPD officer capacity other than transporting a prisoner to federal custody or interacting with a

6

prisoner once the NOPD/FBI SWAT team has secured the individual into custody. Plaintiff Cockerham was informed that the complainant was Defendant Charles "Skip" Gallagher ("Gallagher"), a Chemistry professor at the University of New Orleans. The complaint involved allegations of payroll fraud for 2022 and 2023, with no specific details about those years beyond the amount of money allegedly earned and that Plaintiff Cockerham resided outside of Orleans Parish. Defendant Gallagher alleged there must be payroll fraud for Detective Cockerham to make so much money because he believes Detective Cockerham works an impossible schedule. *(See Ex. J, Gallagher complaint)*

28. Defendant Gallagher also sent an email stating that Plaintiff Cockerham had 'a long history of committing payroll fraud.' However, Plaintiff Cockerham had no such history.

29. Beginning July 2024, Defendant Kirkpatrick, NOPD members, and representatives of the City, abused their NOPD supervisory capacity by maliciously and/or intentionally creating contrived allegations of wrongdoing and criminal conduct against Plaintiff Cockerham, based upon unfounded allegations by Defendant Gallagher. On July 19, 2024, Plaintiff Cockerham was notified that he would be removed from his assignment with the FBI due to pending criminal and administrative investigations. Defendant Kirkpatrick advised the public integrity bureau that all payroll fraud allegations would be investigated criminally. *(See Ex. D, Investigations under control numbers 2024-0380-P, 2024-0446-P, and 2025-0373-R)*

30. On July 22, 2024, Plaintiff Cockerham was reassigned from the FBI task force to the juvenile intake division. *(See Ex. D, Investigations under control numbers 2024-0380-P, 2024-0446-P, and 2025-0373-R; Ex. K, PIB investigative report)*

31. In September 2024, Plaintiff Cockerham learned his administrative investigation was transferred from the NOPD's public integrity bureau and to Transcendent Law Group ("Transcendent") for handling. *(See Ex. D, Investigations under control numbers 2024-0380-P, 2024-0446-P, and 2025-0373-R; See Ex. K, PIB investigative report)*

32. In October 2024, the OIPM received four online anonymous complaints, that accused the NOPD's Command Leadership, including the Defendant Kirkpatrick and the Deputy Chiefs of NOPD's various Bureaus, of having cheated on the Captains' and Majors' Civil Service testing and promotions process by sharing subject matter information with certain individuals at the top of the CS ranked Captains' and Majors' test list, to ensure they obtained higher test scores.

33. In November 2024, Defendant Kirkpatrick requested that the OIG serve as NOPD's proxy to investigate the anonymous complaints alleging cheating by NOPD's senior leadership in the Captains and Majors testing and promotions process. OIG Investigator, Kenneth Petro ("Petro") allegedly learned through 'investigative legwork' that plaintiff might know about the anonymous allegations of cheating.  Plaintiff suspects that Defendant Kirkpatrick made this suggestion to Petro.

34. Transcendent conducted a thorough investigation into the complaint of payroll fraud against Plaintiff Cockerham and cleared him of the payroll fraud allegations in November 2024. *(See Ex. D, Investigations under control numbers 2024-0380-P, 2024-0446-P, and 2025-0373-R)*

35. In December 2024, despite Transcendent's finding of no wrongdoing, NOPD's public integrity bureau notified Plaintiff Cockerham that he must remain on administrative

8

reassignment, pursuant to Defendant Kirkpatrick's orders. (See *Ex. L, Email from Cockerham to Keith Sanchez dated 12/09/2024)*

36. In January 2025, a hearing occurred for the violations of a "16-hour rule" regarding overtime and working over the allotted overtime hours allowed. The violation was sustained, even though Plaintiff Cockerham provided evidentiary information to overturn the violations. Plaintiff Cockerham never received any letter of reprimand from the hearing. Failure to provide the written reprimand deprived Plaintiff Cockerham of the ability to appeal the decision to civil service. [This violates the Police Officer's Bill of Rights, La. R.S. 40:2531-2535.] (See *Ex. M, Email regarding hearing letter dated 2/2/2025)*

37. On January 27, 2025, Petro called Plaintiff to ask him what he knew about the alleged cheating scandal. During that call, Plaintiff was not made aware of his rights pursuant to the Police Officers Bill of Rights. During that call, Plaintiff was asked if he filed the anonymous complaint with the OIPM alleging cheating by NOPD's command leadership. In response, plaintiff stated that he did not.

38. In February 2025, Plaintiff Cockerham was notified that his case was removed from NOPD's public integrity bureau with no findings of payroll fraud and transferred to the New Orleans Office of the Inspector General. The case was transferred at Defendant Kirkpatrick's direction, and she would not allow Deputy Superintendent Keith Sanchez to close it. Instead, Defendant Kirkpatrick, acting with deliberate indifference, maliciously requested that the Attorney General's office re-investigate the case that Transcendent and NOPD's public integrity bureau determined to be baseless.

9

39. Under the guise of investigating a payroll fraud allegation made by Defendant Gallagher, the OIG acquired Plaintiffs' IP address because he did FBI – FTO work on his personal laptop. NOPD allegedly linked Plaintiffs' IP address and the anonymous cheating allegations. The information linking Plaintiffs' IP address to one of the anonymous complaints filed with OIPM was shared with Defendant Kirkpatrick, Chief of PIB Keith Sanchez, and Chief Deputy Superintendent Hans Ganthier, in July 2025, when the OIG made a presentation to NOPD on the OIG's payroll fraud investigation of Plaintiff.

40. Defendant Kirkpatrick claims that, during the July 2025 OIG presentation, Petro mentioned that he made inquiry in January 2025, as to Plaintiff's knowledge about the anonymous complaints regarding the cheating scandal and 'it was evident to her that he (Plaintiff) had lied.' Allegedly, as of as a result of the OIG's presentation at the July 2025 meeting, Defendant Kirkpatrick decided to open a rank investigation into Plaintiff's violation of NOPD's rule on honesty and truthfulness relative to his knowledge or involvement in the anonymous complaints against NOPD's senior leadership. [It is a false assumption that Plaintiff Cockerham filed the anonymous complaint and/or had any knowledge at this time that anyone he knew had filed the anonymous complaint when questioned in January 2025; yet, Defendant Kirkpatrick began a vicious campaign to retaliate against Plaintiff].

41. Upon information and belief, the Attorney General's Office declined bringing criminal charges against Plaintiff Cockerham, despite Defendant Kirkpatrick's request.

42. Additionally, upon information and belief, Defendant Kirkpatrick maliciously submitted a criminal complaint to the Orleans Parish District Attorney's Office alleging payroll

fraud by Plaintiff Cockerham. District Attorney Jason Williams refused to prosecute the case.

43. As a year passed with baseless investigations, Plaintiff Cockerham could not work for the FBI, could not earn overtime and could not work police details because of the frivolous and retaliatory actions of Defendant Kirkpatrick and other Defendants.

44. When none of the allegations regarding payroll fraud were sustained, in July 2025, Defendant Kirkpatrick maliciously and intentionally requested another investigation by the Office of Inspector General ("OIG"), be opened regarding Plaintiff Cockerham's "Untruthfulness." This new round of allegations was emotionally and mentally exhausting, as Plaintiff Cockerham had not given a statement to anyone where he had been untruthful. Plaintiff Cockerham learned the truthfulness complaint was in connection with an anonymous complaint received by NOPD regarding cheating on the Captains' and Majors' examination which occurred in 2024. *(See Ex. D, Investigations under control numbers 2024-0380-P, 2024-0446-P, and 2025-0373-R)*

45. On July 18, 2025, Plaintiff Cockerham was notified that a formal investigation was initiated against relative to "moral conduct, honesty and truthfulness" regarding an anonymous complaint that individuals cheated on the Captain's and Majors' examination. In sum, Plaintiff Cockerham was accused of filing the complaint, and he denied doing so. The Inspector General did not advise Plaintiff Cockerham of his rights pursuant to the Police Officer's Bill of Rights prior to questioning him regarding the allegations of cheating on the Captain's and Majors' exam, nor did they advise Plaintiff Cockerham that he was the subject of the investigation when he was called on his personal phone on his own time. This complaint was alleged months after the phone call between Petro and

11

Plaintiff Cockerham, which occurred in January 2025. *(See Ex. D, Investigations under control numbers 2024-0380-P, 2024-0446-P, and 2025-0373-R)*

46. On August 12, 2025, Plaintiff Cockerham attended a civil service extension hearing regarding the "moral conduct, honesty and truthfulness" investigation. During this hearing, the civil service hearing officer granted a sixty (60)- day extension to the public integrity bureau and the Office of the Inspector General to complete the investigation. Plaintiff Cockerham learned that the honesty and truthfulness investigation was taken from the public integrity bureau and given to the OIG during this hearing. Plaintiff Cockerham argued to the hearing officer that this investigation was moot due to timeliness issues. The investigation, taken from the public integrity bureau and given to the OIG, was not a normal procedure and should have been handled by the public integrity bureau. This investigation falls outside the purview of fraud, waste, and abuse, which is conducted by the OIG.

47. On September 8, 2025, Petro emailed Plaintiff Cockerham a Notice to Render Statement on October 1, 2025. Plaintiff Cockerham was not provided with a Notice to Render Statement during his previous interaction with Petro, during which Plaintiff Cockerham was alleged to have been untruthful. *(See Ex. N, Email from Petro to Cockerham dated 9/8/2025)*

48. On September 10, 2025, Plaintiff Cockerham requested information and documentation from Petro to understand the subject matter of the statement, pursuant to the Police Officers Bill of Rights (La. R.S. 40:2531-2535). *(See Ex. O, Email from Cockerham to Petro dated 9/10/2025)*

49. On October 1, 2025 and October 15, 2025, Plaintiff Cockerham rendered a statement to Petro, accompanied by his attorney, Brigid Collins, who raised the issue that the requested documentation regarding the complaint had not been received prior to the hearing. Petro advised Brigid Collins that he did not have to provide the requested information and/or documentation regarding the complaint, which was a direct violation of the Police Officers Bill of Rights. Petro further advised that he did not need to record the previous statement, because "he (Plaintiff) was like the FBI."

50. In January 2026, Plaintiff Cockerham appeared before NOPD leadership, including Defendant Kirkpatrick, regarding allegations that he had filed an anonymous complaint about cheating on the Captains' and Majors' examination and had lied about it. Prior to this hearing, Plaintiff Cockerham was never provided any evidence that any complaint was filed, let alone by him. During the hearing Stephanie Landry asked a specific question indicating that she, other panel members and the Superintendent had been provided that information. When the City Attorney, Elizabeth Robins was asked if she had turned this information over to Plaintiff, Robins said she turned over everything the OIG provided. When further pressed, Robins got up from her seat, walked around the table, and whispered something into the ear of Landry. The panel suggested that he would be terminated from the NOPD for "untruthfulness," even after Plaintiff Cockerham provided substantial evidence that the investigation was untimely, that the investigator was untruthful about when he spoke to Plaintiff Cockerham, and that multiple violations of the Police Officer's Bill of Rights had occurred. During this hearing, Attorney Brigid Collins was present with Plaintiff Cockerham but was not permitted to speak. There was

13

no evidence provided prior to and during the hearing to Plaintiff Cockerham supporting the violation of "truthfulness".

51. In February 2026, Plaintiff Cockerham appeared before NOPD's leadership regarding allegations that he had filed an anonymous complaint regarding cheating on the Captains' and Majors' examination and lied about it. At the conclusion of the hearing, he was advised that he would be TERMINATD from the rank of Detective / Senior Police Officer due to violating 'Rule 2 relative to moral conduct, honesty and truthfulness.' Plaintiff Cockerham learned that the executive leadership of the NOPD met and stated that the written findings would not be provided to Plaintiff Cockerham until AFTER he exhausted all of his sick time. This hearing was considered a supplemental hearing and is not a normal process when the initial hearing has been closed out and not held open on the record. This is not allowable and a violation of the Police Officer's Bill of Rights. (Upon information and belief, there was a heated, closed-door meeting about among the decision makers regarding the frivolity of the claims against Plaintiff and the suggested discipline, before the intended discipline was revealed to Plaintiff.)

52. In March 2026, another hearing was held. During this hearing, Plaintiff Cockerham was advised that he would not be terminated from NOPD; rather, he would he demoted from the rank of Captain.

53. In taking the above-described actions, Defendants willfully and egregiously chose to ignore long-standing Louisiana laws, policies and procedures intended to protect Plaintiff Cockerham from departmental politics, posturing and personal agendas that were behind the baseless allegations against him. Defendants wrongfully placed Plaintiff Cockerham on administrative reassignment status for over 20 months, which restricted Plaintiff

14

Cockerham's ability to work overtime and details. He exhausted his sick leave during this process due to an on-the-job-related injury that occurred after his reassignment. *(See Ex. P, Email from Brigid Collins to NOPD dated 12/18/2025)*

54. On March 24, 2026, Defendant Kirkpatrick issued a formal Notice of Termination to Plaintiff which misstates several facts, bases claims on assumptions, and attempts to rewrite the history of the many baseless investigations that were launched against him. *(See Ex. Q, Notice of Termination)*

55. For approximately two years, Detective Cockerham was subjected to malicious, baseless and retaliatory investigations at the hands of the Defendants. He was subjected to a hostile work environment.

56. As a result of Defendants' combined actions, Plaintiff Cockerham's wages were willfully and wrongfully withheld and he was subjected to retaliatory conduct, the effects of which have irreparably damaged his career.

57. Despite the absence of criminal charges, Defendants continued to pursue administrative investigations against Plaintiff Cockerham.

58. Plaintiff was subjected an investigative interview that were not properly recorded.

59. Plaintiff was denied meaningful participation of counsel during key proceedings.

60. Defendants failed to comply with statutory deadlines governing police disciplinary investigations.

## C. Damage to Plaintiff's Reputation

61. Defendant Kirkpatrick's unjustified conduct in forcing the unwarranted and unfounded investigations and prosecution of Plaintiff Cockerham, based solely upon spurious rumors started by a Chemistry Professor (with no law enforcement experience), resulted

15

in irreparable injury to Plaintiff Cockerham personally, financially, and to his reputation. *(See Ex. D, Investigations under control numbers 2024-0380-P, 2024-0446-P, and 2025-0373-R)*

62. As a result of Defendants' conduct, false publications caused serious injury to Plaintiff Cockerham by impugning, embarrassing, demeaning, humiliating, and defaming his reputation and character. Furthermore, this publicity has forever threatened Plaintiff Cockerham's personal safety and welfare to conduct undercover work, jeopardized ongoing investigations that he was conducting, and jeopardized past convictions based upon his work product by challenging his morality, honesty and truthfulness. Allegations of dishonesty against a law enforcement officer carry severe professional consequences.

63. Plaintiff Cockerham has sought alternative jobs in law enforcement. Upon information and belief, NOPD's leadership is giving negative references to other law enforcement agencies to black ball Plaintiff from obtaining gainful employment in the law enforcement community.

## V. FIRST CAUSE OF ACTION

**(Retaliation in Violation of the First Amendment)**

64. Plaintiff Cockerham incorporates all preceding allegations (1-56).

65. Upon information and belief, someone within Plaintiff's household engaged in protected speech and conduct concerning matters of public concern within NOPD, *i.e. cheating on a Captain's and Majors' examination*. [Plaintiff did not learn this information until AFTER his formal hearings in February 2026]. Defendants acted against Plaintiff Cockerham believing that he engaged in protected speech and conduct concerning matters of public concern within NOPD.

66. Defendants were aware that: if Plaintiff Cockerham had sent an anonymous complaint to NOPD, then his conduct was protected conduct.

67. The investigations and disciplinary actions described herein were initiated in retaliation for what NOPD believed was Plaintiff Cockerham's protected conduct.

68. After several investigations clearing Plaintiff Cockerham of wrongdoing, Defendants failed and/or refused to make him whole by returning him to the detective position he held working with the FBI, prior to Defendants' malicious and wrongful conduct. Instead, Defendants further engaged in punitive conduct by relegating Plaintiff Cockerham to a position failing to recognize his achievements, experience and training, all to his detriment.

69. Defendants' actions caused a deprivation of liberty and property interests, including constructive termination of Plaintiff Cockerham from a decorated career as a law enforcement officer.

70. As a direct result of Defendants' conduct, Plaintiff Cockerham suffered tortious interference with contractual relations; was subjected to libel, slander and false light defamation; endured a negligently directed investigation resulting in intended malicious prosecution; and suffered extreme emotional distress and upset.

## VI. SECOND CAUSE OF ACTION

**(Deprivation of Procedural Due Process in Violation of Fourteenth Amendment)**

71. Plaintiff Cockerham incorporates all preceding allegations (1-63).

72. Plaintiff Cockerham had a property interest in his continued employment and reputation. Plaintiff also had a right to his liberty, which was jeopardized with frivolous criminal charges.

73. Defendants, while acting under the color of state law, maliciously, recklessly and/or willfully or wantonly violated Plaintiff Cockerham's procedural and substantive due process guarantees by arbitrarily and capriciously investigating him and subjecting him to potential criminal prosecutions without due probable cause or due process in violation of his right to privacy and right to nondisclosure of intimate personal information or confidentiality.

74. Defendants failed to comply with required investigative procedures.

75. Plaintiff Cockerham was denied meaningful notice and an opportunity to defend himself.

76. The baseless investigations exceeded the time limitation, permitted by Louisiana law.

## VII. THIRD CAUSE OF ACTION

### (Municipal Liability - Monell Liability – 42 U.S.C. §1983)

77. Plaintiff Cockerham incorporates all preceding allegations (1-69).

78. The unconstitutional actions described herein were undertaken pursuant to policies, practices, or customs of the City.

79. The City failed to adequately train and/or supervise officials responsible for police disciplinary investigations.

80. The City permitted and actively participated in retaliatory investigative practices within the NOPD. Upon information and belief, Attorney Elizabeth Robbins was a willing participant in the frivolous, retaliatory, and malicious investigations against Plaintiff Cockerham.

81. These policies and practices directly caused the constitutional violations suffered by Plaintiff Cockerham.

18

## VIII. FOURTH CAUSE OF ACTION

**(Vicarious Liability)**

82.  Plaintiff Cockerham incorporates all preceding allegations (1-74).

83. As the principal for and the employer of the named individual Defendants, Defendant City, pursuant to the doctrine of *respondeat superior*, is vicariously liable for the wrongful acts and omissions of Defendants, who were the actual agents, representatives, and employees of the Defendant City, and who at all times were acting within the scope of their employment or within the scope of the apparent authority given by the Defendant City. Such acts were authorized or ratified by Defendant City. Such acts were the proximate cause of Plaintiff Cockerham's injuries and damages for which he is seeking recovery in an amount to be proven at the time of trial.

## IX.  FIFTH CAUSE OF ACTION

**(Infliction of Emotional Distress)**

84.  Plaintiff Cockerham incorporates all preceding allegations (1-76).

85. The Defendants' unlawful conduct towards Plaintiff Cockerham was careless, reckless, unreasonable, negligent and/or intentional and were the proximate cause of the infliction of severe mental anguish and emotional distress suffered by Plaintiff Cockerham, for which he is entitled to recover damages in an amount to be established at trial.

86. Defendant Gallagher made negligent and/or grossly negligent false statements about Plaintiff Cockerham which spurred baseless investigations and caused emotional injury to Plaintiff Cockerham.

## X.  SIXTH CAUSE OF ACTION

**(Negligence/Gross Negligence)**

19

87. Plaintiff Cockerham incorporates all preceding allegations (1-79).

88. The direct and proximate cause of the investigations, wrongful requests for criminal investigations, libel, slander and false light publications, was the negligence and/or gross negligence of the Defendants in failing to conduct internal investigations using the requisite standard of care necessary to support and/or prepare the prosecution of Plaintiff Cockerham. Instead, they relied upon "evidence" supplied by a Chemistry Professor, with no law enforcement experience. They failed to insure the due process and constitutional rights of Plaintiff Cockerham.

89. Defendant City, by its negligence and/or gross negligence of its employees and agents, gave express and/or implied consent permitting wrongful acts to be perpetrated against Plaintiff Cockerham. As a direct result, the Defendants are liable for any damages caused by Defendants' negligence and/or gross negligence.

90. Defendants jointly and severally by their conduct, breached their duty to Plaintiff in failing to exercise the standard of care which Defendants owed to him, and in doing so, negligently caused Plaintiff to suffer injury.

91. As a further direct and proximate result of Defendants' joint and several negligence and/or gross negligence, and unlawful acts in violation of the laws of the State of Louisiana, Plaintiff Cockerham has suffered physical, mental and emotional injuries in amounts to be proven at the time of trial.

92. Defendant Gallagher made negligent and/or grossly negligent false statements about Plaintiff Cockerham which spurred baseless investigations and caused injury to Plaintiff Cockerham.

20

## XI.  SEVENTH CAUSE OF ACTION

**(Tortious Interference with Contractual Relations)**

93. Plaintiff Cockerham incorporates all preceding allegations (1-85).

94. Plaintiff Cockerham had a valid contractual employment relationship with the City as well as numerous valid contractual relationships and/or business expectations with private individuals residing within and/or about the City.

95. Defendants were aware of the existence of Plaintiff's valid contractual relationship with the City, as well as the existence of other contractual relationships and/or business expectancies Plaintiff Cockerham had with individuals and/or businesses within the City. Defendants, by their conduct as alleged herein, in negligently and/or willfully and maliciously making defamatory statements about Plaintiff Cockerham, wrongfully interfered with and invaded Plaintiff Cockerham's contractual relationships and/or business expectancies.

## XII. EIGHTH CAUSE OF ACTION

**(Wrongful Withholding of Wages)**

96. Plaintiff Cockerham incorporates all preceding allegations (1-88).

97. Defendant City refused and/or failed to pay Plaintiff Cockerham compensation owed from the date of the frivolous investigations to the present, without lawful purpose. As a result, Plaintiff Cockerham has suffered economic injury and loss

## XIII.  NINTH CAUSE OF ACTION

**(Hostile Work Environment)**

98. Plaintiff Cockerham incorporates all preceding allegations (1-90).

21

99. Defendants created and/or permitted a retaliatory and hostile work environment at the NOPD to exist against Plaintiff Cockerham, which caused Plaintiff Cockerham to be injured in an amount to be determined at trial.

## XIV. TENTH CAUSE OF ACTION

**(Wrongful Termination in Violation of the First and Fourteenth Amendments (42 U.S.C. §1983))**

100.     Plaintiff Cockerham incorporates all preceding allegations (1–69) as if fully set forth herein.

101.     Plaintiff Cockerham was terminated from his employment with the New Orleans Police Department effective March 25, 2026, for an alleged violation of "Honesty and Truthfulness" under NOPD Rule 2, as reflected in the official Notice of Termination.

102.     The stated basis for Plaintiff Cockerham's termination was pretextual and not supported by competent or lawfully obtained evidence.

103.     The termination was the culmination of a prolonged pattern of retaliatory investigations, procedural violations, and unlawful conduct orchestrated and/or ratified by Defendants.

104.     Plaintiff Cockerham was deprived of his constitutionally protected property interest in his continued employment without due process of law.

105.     Plaintiff Cockerham was further deprived of his liberty interest in his reputation, as the finding of "dishonesty" effectively renders him unemployable in law enforcement and impairs his ability to testify in judicial proceedings.

106.     The disciplinary proceedings leading to Plaintiff Cockerham's termination were fundamentally flawed and violated clearly established law, including:

- Failure to comply with the Louisiana Police Officer Bill of Rights;

- Failure to provide timely and adequate notice of charges;

- Failure to provide access to evidence prior to hearings;

- Failure to allow meaningful participation of counsel;

- Reliance on unrecorded and procedurally defective statements;

- Exceeding statutory deadlines governing investigations;

- Consideration of evidence not disclosed to Plaintiff prior to the hearing.

107.    Defendants' actions were arbitrary, capricious, malicious, and undertaken in bad faith.

108.    The termination decision was motivated, at least in part, by Defendants' belief that Plaintiff Cockerham engaged in protected speech and/or conduct, including alleged involvement in reporting misconduct within the NOPD.

109.    Defendants' conduct would deter a reasonable law enforcement officer from engaging in protected activity.

110.    As a direct and proximate result of Defendants' actions, Plaintiff Cockerham has suffered:

- loss of employment;

- loss of wages and benefits;

- loss of future earning capacity;

- reputational harm;

- emotional distress and mental anguish.

111.    Defendants are liable to Plaintiff Cockerham for all damages resulting from his wrongful termination pursuant to 42 U.S.C. §1983.

## XV.  DAMAGES

112.    Plaintiff Cockerham incorporates all preceding allegations (1-92).

113.    As a direct result of Defendants' conduct, Plaintiff Cockerham has suffered:

A.  Damage to his professional reputation;

B.  Severe emotional distress with physical manifestation of illness;

C.  Loss of employment opportunities (past, present and future); and

D.  Economic losses including lost wages and benefits;

E.  Violation of the Police Officer's Bill of Rights;

F.  Violation of Plaintiff Cockerham's constitutional rights; and

G.  Plaintiff further seeks damages arising from his wrongful termination, including reinstatement or front pay in lieu thereof, back pay, lost benefits, and all economic and non-economic losses associated with the termination of his employment.

## XVI. JURY DEMAND

Plaintiff demands a trial by jury on all issues triable by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cockerham respectfully prays for judgment in his favor and against Defendants as follows:

1.  For an award of Compensatory damages against Defendants, jointly and severally, for special and general damages in amounts to be proven at the time of trial;

2. For an award of damages pursuant to 42 U.S.C. 1983 and 1985 including an award of punitive damages;

3. For an award of damages for wrongful termination;

4. For an award of back pay and economic losses;

5. For an award of damages for emotional distress and mental anguish;

6. For an award of pre-judgment interests as provided by law;

7. For an award of Attorney's fees as provided by law;

8. Injunctive relief preventing further unconstitutional conduct;

9. All costs of these proceedings; and

10. Any additional relief deemed just and proper.

Respectfully submitted,

*/s/ Suzette P. Bagneris*

_____

Suzette P. Bagneris (LSBA No. 22241)
Emile A. Bagneris, III (LSBA No. 22240)
The Bagneris Firm, LLC
1929 Jackson Avenue
New Orleans, Louisiana 70113
Telephone: (504) 810-3995
Facsimile: (504) 336-2198
Email: sbagneris@bagnerislawfirm.com
*Counsel for Plaintiff Chad Duran Cockerham*