UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHAD DURAN COCKERHAM<br>*Plaintiff*<br>*v.*<br>CITY OF NEW ORLEANS, ET AL,<br>*Defendants* | 26-CV-000647<br>JUDGE: CARL J. BARBIER<br>MAGISTRATE JUDGE: DONNA PHILLIPS CURRAULT |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT CHARLES "SKIP" GALLAGHER'S MOTION TO DISMISS**

Defendant Charles "Skip" Gallagher, by and through undersigned counsel, respectfully submits this Memorandum of Law in support of his Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and 12(b)(1), and 12(b)(5),

The claims against Mr. Gallagher fail for five reasons: (1) Mr. Gallagher's actions are protected by privilege, (2) Plaintiff has failed to state a claim for negligence, (3) Plaintiff's claims against Mr. Gallagher are foreclosed by the doctrine of "opinion based on disclosed facts," (4) supplemental jurisdiction does not exist for Plaintiff's state law claims against Mr. Gallagher, and (5) Plaintiff failed to effectuate proper service. Simply put: Mr. Gallagher should never have been named as a defendant in this suit, and Plaintiff does not even *allege* he served Mr. Gallagher within the necessary time period for personal jurisdiction to attach. For the reasons explained more fully below, the claims against Mr. Gallagher should be dismissed with prejudice.

**BACKGROUND**

Mr. Gallagher is a chemistry professor at the University of New Orleans. He is a private citizen. He exercised his First Amendment right to express himself on a matter of public concern—

the misconduct of a New Orleans police officers—by filing a complaint against NOPD Officer Chad Cockerham with the Office of the Independent Police Monitor ("OIPM"). *See* R. Doc. 11-1. The OIPM is an independent, civilian police oversight agency.[1] The New Orleans City Council created the agency by unanimously passing an ordinance that former Mayor Ray Nagin signed into law on July 8, 2008.[2] New Orleans voters thereafter enshrined the authority of the office in the City' Charter.[3] Its duties and responsibilities include monitoring citizen complaints of police misconduct and evaluating police investigations of those complaints.[4] It exists to "receiv[e] public feedback on the police," "provide accountability and oversight" to the NOPD, and hold the NOPD "accountable."[5] OIPM subsequently transferred the investigation to the NOPD Public Integrity Bureau, an "internal department of the NOPD charged with investigating claims of office misconduct."[6]

Notably, Officer Cockerham was not punished because of Mr. Gallagher's reporting of misconduct. He admits in his Complaint (R. Doc. 1 at ¶ 36) that although the payroll violations were "sustained," he did not even receive a letter of reprimand. According to Cockerham's Complaint, he was demoted for a totally different issue – whether he was truthful "regarding an

---

[1] OIPM, "The Monitor's Mic"; see https://nolaipm.gov/the-monitors-mic/ (last visited August 27, 2026).
[2] *Id.* at OIPM History, available at: https://nolaipm.gov/history/
[3] New Orleans, La., Home Rule Charter art. XIV, § 2-1121.
[4] *See id.* at art. XIV, § 2-1121 (3) ("The independent police monitor shall monitor the New Orleans Police Department, particularly in the areas of: civilian and internally-generated complaints; internal investigations; discipline; use of force; critical incidents; and in-custody deaths. The independent police monitor shall review and analyze the numbers and types of complaints; assess the quality and timeliness of New Orleans Police Department investigations …"
[5] *Id.*
[6] *See Hainey v. City of New Orleans*, 21-cv-407, R. Doc. 230, *9 (E.D. La. Aug. 6, 2024) (City of New Orleans explaining role of PIB).

anonymous complaint that individuals cheated on the Captain's and Majors' examination." R. Doc. 1 at ¶ 45 *et seq*. Similarly, Cockerham contends that the Office of the Inspector General investigated Cockerham not based on the allegations of Mr. Gallagher's complaint, but rather used that complaint as a "guise" or pretext or a totally separate investigation. R. Doc. 1 at ¶ 39.

Even though Cockerham admits that Mr. Gallagher was not the cause of his punishment, he included Mr. Gallagher as a defendant in the sprawling and scattershot Complaint, which alleges ten claims against fourteen different Defendants. Across 25 pages of allegations, Mr. Gallagher is mentioned only a handful of times; including passing references to Mr. Gallagher as "a Chemistry Professor (with no law enforcement experience)." Plaintiff's sole claims against Mr. Gallagher are state law claims. Were this issue properly brought in state court, it would be subject to Louisiana's Special Motion to Strike (Anti-SLAPP) as it is a quintessential SLAPP ("Strategic Lawsuit Against Public Participation")—a suit designed to silence a member of the public who spoke out on an issue of public interest (in this case, police misconduct).

## <u>SUMMARY OF THE ARGUMENT</u>

Mr. Cockerham's claims against Mr. Gallagher must be dismissed for five reasons: (1) Mr. Gallagher's OIPM complaint alleging Plaintiff's misconduct as an officer is covered by privilege; (2) Mr. Cockerham has failed to state a claim against Mr. Gallagher; (3) Plaintiff's claims against Mr. Gallagher are foreclosed by the doctrine of "opinion based on disclosed facts," (4) there are no facts supporting supplemental jurisdiction; and (5) Plaintiff failed to effectuate valid service—he failed to personally serve Mr. Gallagher, and his final attempt was long past the deadline for valid service.

Although the Complaint contains allegations about Mr. Gallagher, Plaintiff does not specify what claims he is asserting against Mr. Gallagher based on those allegations. This omission violates

the bedrock pleading requirement that a complaint must set forth "a short and plain statement ***of the claim*** showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). The purpose of this requirement is to provide "fair notice ***of what the claim is*** and the grounds upon which it rests." *Ashcroft v. Iqbal*, 556 U.S. 662, 698–99 (2009) (emphasis added); *see also Bell Atl. v. Twombly,* 550 U.S. 544,555 (2007); *Jones v. United States Postal Serv.,* 690 F. App'x 147, 149 (5th Cir. 2017).

**<u>ARGUMENT</u>**

1. **This Court should dismiss the claims against Mr. Gallagher because Mr. Gallagher's complaint alleging police misconduct is shielded by a Louisiana privilege.**

To promote public participation, Louisiana has a robust conditional-privilege doctrine that shields good-faith reports to bodies authorized by law to act on such information. Because Mr. Gallagher's complaint to the Orleans Independent Police Monitor ("OIPM") is protected by this conditional privilege, Plaintiff's claims must fail.

The Louisiana Supreme Court has recognized Louisiana's "strong public policy" of encouraging honest and good faith reporting of criminal misconduct. *Kennedy v. Sheriff of E. Baton Rouge*, 05-1418 (La. 07/10/06), 935 So.2d 669, 683. This is because "[i]t would be self-defeating for society to impose civil liability on a citizen for inaccurately reporting criminal conduct with no intent to mislead." *Id. (quoting Arellano v. Henley,* 357 So.2d 846, 849 (La. App. 4 Cir. 1978). While traditionally analyzed in the context of defamation claims, the privilege is equally applicable to Mr. Gallagher's statements to the OIPM regarding Officer Cockerham's alleged misconduct. *See e.g., Adams v. Harrah's Bossier City Inv. Co., L.L.C,* 41,468 (La. App. 2 Cir. 1/10/07), 948 So. 2d 317, 321, *writ denied sub nom. Adams v. Harrah's Bossier City Inv. Co.,* 2007-0639 (La. 5/11/07), 955 So. 2d 1281 ("We find this [conditional privilege] equally applicable in evaluating any claim that arises

from a private citizen making a report to law enforcement."). This conditional privilege is designed to recognize and protect "the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate." *Kennedy,* 935 So. 2d at 681-82 (quotation omitted).

The conditional privilege applies here, given the allegations of the complaint. The complaint alleges only two things that Mr. Gallagher did:

- Gallagher lodged a complaint with OIPM about Cockerham in which "Gallagher alleged there must be payroll fraud for Detective Cockerham to make so much money because he believes Detective Cockerham works an impossible schedule" R. Doc. 1 at ¶ 27.

- Gallagher "sent an email stating that Plaintiff Cockerham had 'a long history of committing payroll fraud.'" *Id.* at 28.

When determining the scope and applicability of the conditional privilege, courts consider the elements of "good faith, an interest to be upheld and a statement limited in scope to this purpose, a proper occasion, and publication in the proper manner and to proper parties only." *Adams, supra,* at 681 (quotations and citations omitted).

Here, Mr. Gallagher meets all elements. First, his OIPM complaint was made in good faith—as evidenced by the document itself, R. Doc. 1-11, which is premised entirely on Mr. Gallagher's review of Mr. Cockerham's timesheets, produced pursuant to public records requests.[7] Good faith is bolstered by the fact that Mr. Gallagher showed his work: he "attached 2 spreadsheets for the years 2022 and 2023 for officer Chad Cockerham."[8] Mr. Gallagher explained

[7] *See also* R. Docs. 5-1 and 5-4 assessing Mr. Gallagher's credibility as a complainant, discussed *infra*.
[8] R. Doc. 1-11 at 3.

his reasoning, and offered OIPM ways to corroborate what the records suggested.[9] Additionally, the complaint was made in pursuit of a valid interest to be upheld: officer and department accountability regarding payroll fraud, an issue that has long plagued the New Orleans Police Department.[10] Finally, the complaint was made in a proper manner and to a proper party only—Mr. Gallagher filed his complaint with the OIPM, an organization that literally exists to "receiv[e] public feedback on the police," "provide accountability and oversight" to the NOPD and hold the NOPD "accountable."[11] Likewise, the email described in paragraph 28 of the Complaint was part of the same process; it was a communication with the NOPD Public Integrity Bureau after that department took over the investigation, and is attached as Exhibit C.[12] Similar to the OIPM, the Public Integrity Bureau is an "internal department of the NOPD charged with investigating claims of office misconduct."[13] Mr. Gallagher's email to PIB similarly included a spreadsheet of data

---

[9] *Id*. at 3-4.

[10] *See e.g.,* Lee Zurik & Dannah Sauer, *Timesheets show questionable practice among NOPD's Public Integrity Bureau*, Fox 8, (May 4, 2022), https://www.fox8live.com/2022/05/05/zurik-timesheets-show-questionable-practices-among-nopds-public-integrity-bureau/; Lee Zurik, *NOPD Captain Sabrina Richardson, subject of a series of FOX 8 investigations, demoted,* Fox 8, (Oct. 6, 2022), https://www.fox8live.com/2022/10/07/nopd-captain-sabrina-richardson-subject-series-fox-8-investigations-gets-demoted/; *NOPD suspends demoted Richardson for 120 days after Fox 8 investigation into timesheet irregularities*, (Oct. 27, 2022), https://www.fox8live.com/2022/10/28/nopd-suspends-demoted-richardson-120-days-after-fox-8-investigation-into-timesheet-irregularities/; Lee Zurik, *Suspended NOPD lieutenant under federal investigation,* Fox 8, (Nov. 7, 2022), https://www.fox8live.com/2022/11/08/zurik-suspended-nopd-lieutenant-under-federal-investigation/; Lee Zurik & Dannah Sauer, *NOPD Lieutenant returns to detail work after suspension over alleged abuse of program, Fox 8,* (Apr. 5, 2023), https://www.fox8live.com/2023/04/06/zurik-nopd-lieutenant-returns-detail-work-after-suspension-over-alleged-abuse-program/.

[11] *Office of the Independent Police Monitor* (last visited August 28, 2026), https://nolaipm.gov/our-mission/.

[12] Generally, a Motion to Dismiss is limited to the Complaint and its attachments. But the Fifth Circuit has allowed a Motion to Dismiss to included documents "that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." Scanlan v. Texas A&M University, 343 F.3d 533, 536 (5th Cir. 2003), citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498–99 (5th Cir. 2000). Here, the email is referred to in Plaintiff's Complaint at ¶ 28, and is central to his claims against Mr. Gallagher because it is one of the two things Plaintiff says Mr. Gallagher did wrong.

[13] *See Hainey v. City of New Orleans*, 21-cv-407, R. Doc. 230, *9 (E.D. La. Aug. 6, 2024) (City of New Orleans explaining role of PIB).

showing Gallager's work.[14] Just as with the initial OIPM complaint, that email was in "good faith, an interest to be upheld and a statement limited in scope to this purpose, a proper occasion, and publication in the proper manner and to proper parties only" – thus meeting the *Adams* test.

Permitting a citizen complainant to be sued for making allegations of official police misconduct—based on objective facts—to an agency charged with holding police accountable, threatens to chill public participation and endangers public safety. For that reason, Louisiana law forbids liability for such a complaint. Mr. Gallagher's complaint to the OIPM is covered by conditional privilege, and the claims against him should be dismissed.

**2. This Court should dismiss the claims against Mr. Gallagher because Plaintiff fails to state a claim for negligence against Mr. Gallagher.**

Even if the Complaint could reasonably be construed as asserting a negligence claim against Mr. Gallagher, such a claim would fail as a matter of law because Plaintiff has not alleged the elements needed to state a negligence claim under Louisiana law. Federal Rule of Civil Procedure 12(b)(6) requires that a complaint contain sufficient, nonconclusory allegations that, when accepted as true, state a claim for relief that is plausible on its face. *P Mack Indus. LLC v. Mosaic Fertilizer, LLC,* 970 F. Supp. 2d 516, 518–19 (E.D. La. 2013). Claims possess facial plausibility when pleaded with such factual content that the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 519. While detailed factual allegations are not necessary, a plaintiff must still supply "more than labels and conclusions" and more than "unadorned, 'the-defendant-unlawfully-harmed-me' accusation[s]." *Id.* at 518-19. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 519.

[14] Ex. C.

Louisiana Civil Code articles 2315 and 2316 govern negligence claims. To state a claim for negligence under them, a plaintiff must allege specific elements: the defendant had a duty to conform his conduct to a specific standard of care (the duty element); the defendant's conduct failed to conform to the appropriate standard of care (the breach element); the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact-element); and actual damages (the damages element). *See S.J. v. Lafayette Parish Sch. Bd.,* 41 So.3d 1119, 1125 (La. 2010); *see also Phillips v. Correct Care Solutions, Inc.*, No. 16-16551, 2017 WL 367663, at *3 (E.D. La. Jan. 25, 2017*) (citing Iqbal,* 556 U.S. at 678). Under the duty-risk model, if the plaintiff fails to establish any of the elements, liability does not attach. *Audler v. CBC Innovis Inc.,* 519 F.3d 239, 249 (5th Cir. 2008) (internal citations omitted).

Whether this Court analyzes Plaintiff's allegations against Mr. Gallagher through a public policy lens or evaluates their viability through Louisiana's duty/risk analysis, the result is the same—the claims must be dismissed, with prejudice.

*a. Plaintiff failed to plead that Mr. Gallagher owed him a duty of care.*

For the purposes of a negligence claim, duty is the threshold issue and whether a defendant owes a duty of care is a question of law. *Doe v. McKesson*, 2021-00929 (La. 3/25/22), 339 So. 3d 524, 531 (citing *Posecai v. Wal-Mart Stores, Inc.,* 752 So.2d 762, 766 (La. 1999). Courts must inquire whether a plaintiff has any law—statutory, jurisprudential or arising from general principles of fault—to support his or her claim. *See Ebarb v. Matlock*, 46,243 (La. App. 2 Cir. 5/18/11), 69 So. 3d 516, 520, *writ denied*, 2011-1272 (La. 9/23/11), 69 So. 3d 1164. In Louisiana, courts evaluate specific duties of care based on consideration of:

> various moral, social, and economic factors, including the fairness of imposing liability; the economic impact on the defendant and on similarly situated parties; the need for an incentive to prevent future

> harm; the nature of defendant's activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and its institutions are evolving.

*Posecai*, 752 So.2d at 766.

The sparse allegations involving Mr. Gallagher in the sprawling, 25-page Complaint are threadbare at best, and they do not articulate an established duty of care. In a conclusory fashion, Plaintiff pleads "Defendants breached their duty to Plaintiff in failing to exercise the standard of care which Defendants owed to him" but he does not identify (1) which Defendants to whom this refers or (2) what that specific duty of care Defendants allegedly breached. Although the NOPD, as Mr. Cockerham's employer, may owe him a duty of care, Mr. Gallagher, a private citizen, does not, under these circumstances. Nor has Plaintiff provided any allegations to support finding a duty of care owed by Mr. Gallagher. Further, the *Posecai* factors weigh against recognizing a duty of care on these facts. Imposing liability on a citizen who reports police misconduct to authorities is deeply unfair and against public policy. Permitting this cause of action would chill the speech of other members of the public who will be less likely to report police misconduct.

*b. Even if duty were established, Plaintiff failed to allege breach.*

In addition to the absence of facts constructing a duty of care, Plaintiff's allegations also fail to establish a breach of that duty. Once the Public Integrity Bureau ("PIB") began investigating the complaint regarding Officer Cockerham's misconduct, it did a credibility assessment of Mr. Gallagher as a complainant. This assessment concluded:

> Mr. Skip Gallagher (Complainant) was found to be credible. In assessing the credibility of the complainant, Mr. Skip Gallagher, while he did not appear to have intentionally misled or fabricated information, certain inaccuracies were present in his findings. Mr. Gallagher compiled Excel spreadsheets for the years 2016-2017, which reflected what he believed to be policy violations committed by Officer Cockerham. Upon review, Sgt. Sam noted that Mr. Gallagher had flagged several alleged violations under the 16-hours work rule and the 8 hours rest period rule,

> some of which aligned with dates that Sgt. Sam found but not hour calculations. However, many of the hours he reported did not match the verified hours Sgt. Sam calculated using departmental tools and guidelines. The discrepancy indicated that Mr. Gallagher may have used an alternate or less precise method of calculation, likely due to his interpretation of the 24-hour rule or lack of access to the department-approved calculation tools. **Mr. Gallagher's intent was clearly to address potential violations, suggesting his actions were driven by a concern for policy adherence rather than any intent to deceive or exaggerate**. His mistaken findings, therefore, seem to stem from a misunderstanding of policy application rather than any deliberate misrepresentation. Overall, Mr. Gallagher's assessment appeared to have been made in good faith but lacked technical accuracy due to his differing approach to interpreting NOPD policy.

R. Doc. 1-2, p. 106 (PIB Investigation).

After PIB followed up with Mr. Gallagher again, it concluded for a second time that he was "credible in his recorded statement," "deemed truthful in his responses," and "raise[d] a valid issue of ethical compliance and oversight gaps within NOPD'S payroll system[.]" R. Doc. 1-2, p. 86. These facts defeat any hypothetical breach of duty.

*c. Independent investigation disrupts causation.*

Even if this Court found that Mr. Gallagher did owe Plaintiff a duty of care, Plaintiff has not pled that Mr. Gallagher's alleged breach of duty was the cause of his damages. In fact, a plain reading of the Complaint demonstrates otherwise. Mr. Gallagher made his complaint to the OIPM in July 2024. R. Doc. 1, p. 27. This complaint was referred to the Public Integrity Bureau ("PIB") and then to Transcendent Law Group for handling. R. Doc. 1, p. 29-31.

> Transcendent conducted a thorough investigation into the complaint of payroll fraud against Plaintiff and cleared him of the payroll fraud allegations in November 2024. In December 2024, despite Transcendent's finding of no wrongdoing, NOPD's public integrity bureau notified Plaintiff Cockerham that he must remain on administrative reassignment, pursuant to Defendant Kirkpatrick's orders.

*Id.* p. 34-35. Plaintiff's Complaint alleges the ensuing independent investigation into Mr. Cockerham's statements about anonymous cheating allegations regarding NOPD leadership are what ultimately led to Officer Cockerham's demotion.

Indeed, Officer Cockerham admits in his complaint that the investigation into Mr. Gallagher's investigation was heard and closed without reprimand (R. Doc. 1 at ¶ 36) – and that it was the totally separate investigation that led to Officer Cockerham's demotion (¶¶ 51-52). As such, this definitively breaks any purported chain of causation, given that Cockerham admits that Mr. Gallagher's complaint didn't lead to the alleged harm.

Furthermore, under Louisiana law, an independent investigation by law enforcement—such as what occurred here—breaks any causation chain such that plaintiff cannot meet the legal causation element of a negligence claim. *See Kennedy v. Sheriff of East Baton Rouge*, 05-1418 (La. 7/10/06); 935 So.2d 669. In *Kennedy*, the Louisiana Supreme Court held that tort claims, such as malicious prosecution, cannot be maintained when the involvement of the private actor ceases and the police officers take over, thereby breaking the chain of legal causation. *Kennedy, supra* at n. 20. Importantly, the rationale for dismissing tort claims due to a break in causation because of an independent investigation (espoused by the Louisiana Supreme Court in *Kennedy, supra*) is not limited to malicious prosecution claims. *Adams v. Harrah's Bossier City Inv. Co., LLC*, 41,468 (La. App. 2 Cir. 1/10/07); 948 So.2d 317, 320. Rather, the rationale applies to Plaintiff's other state law claims as well. *Id.*[15]

---

[15] Because of the haphazardness of Plaintiff's Complaint and out of an abundance of caution, Mr. Gallagher also notes: Louisiana does not recognize NIED as an independent tort, and it cannot give rise to its own cause of action. *Phillips v. L. Brands Service Company, L.L.C.,* 83 F.4th 291, 303 (citing *Simmons v. State,* 255 So. 3d 701, 705 (La. App. 4 Cir. 2018). Thus, because Cockerham's claim of negligence against Mr. Gallagher fails, so does the claim of NIED. Further, to the extent that Cockerham tries to assert a claim of

Plaintiff has simply not carried his burden of articulating a legally cognizable claim against Mr. Gallagher. Further, no facts—or law—support any finding of liability on the part of Mr. Gallagher. The claims against him should be dismissed, with prejudice, and Plaintiff Cockerham should be sanctioned for filing such frivolous claims.

**3. Plaintiff's claims against Mr. Gallagher are foreclosed by the doctrine of "opinions based on disclosed facts."**

When a plaintiff seeks to use the power of courts to punish the speech of a defendant, constitutional analysis is necessary. In particular, the doctrine of "opinions based on disclosed facts" applies constitutional protection to a person when they have expressed an opinion – and disclosed the facts on which they base their opinion. *See Favre v. Sharpe,* 117 F.4th 342, 347 (5th Cir. 2024) (explaining that under Mississippi law, "[o]pinion statements are actionable only if they clearly and unmistakably imply the allegation of undisclosed false and defamatory facts as the basis for the opinion."), *citing* Restatement (Second) of Torts § 566 (Am. L. Inst. 1977); *Moldea v. N.Y. Times Co.,* 15 F.3d 1137, 1144-45 (D.C. Cir.1994) ("Because the reader understands that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation."); *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1290 (4th Cir. 1987) (challenged statement not actionable because its "premises are explicit, and the reader is by no means required to share [defendant's] conclusion"). The reason for this rule is that the "tipster's interpretation or opinion is based on these fully disclosed facts, which the reader

tortious interference with a contract, this claim also fails because Mr. Gallagher is not a corporate officer of the NOPD. *See 9 to 5 Fashions, Inc. v. Spurney,* 538 So.2d 228, 231 (La. 1989).

is permitted to interpret in his own way, and thus is not actionable as defamation." *Newby v. Enron Corp.*, 511 F. Supp. 2d 742, 821 (S.D. Tex. 2005).

The Louisiana Supreme Court has adopted this doctrine as well. In *Johnson v. Purpera,* 320 So. 3d 374, 397 (La. 2021) the Louisiana Supreme Court addressed a defamation claim against the Louisiana Legislative Auditor arising out of statements appearing in two audit reports and the summaries of those reports. The Louisiana Supreme Court looked at the allegedly defamatory statements and concluded that they were the "opinions, or conclusions, of the auditors based on disclosed facts and, as such, are not provably false." The court concluded that as "a result, they are entitled to full constitutional protection . . . and the defendants are entitled to summary judgment in their favor." *Id.*, *citing Romero v. Thomson Newspapers (WI), Inc.*, 648 So.2d 866 (La. 1995).

Here, the doctrine of "opinion based on disclosed facts" squarely forecloses Plaintiff's claims against Mr. Gallagher. As noted above, Plaintiff alleges Mr. Gallagher said two bad things: that "there must be payroll fraud for Detective Cockerham to make so much money because he believes Detective Cockerham works an impossible schedule" (R. Doc. 1 at ¶ 27) and that Plaintiff had "a long history of committing payroll fraud" (*id.* at 28). But as noted in the documents attached to and referred to in Plaintiff's complaint, Mr. Gallagher didn't just lob an unsupported accusation – he included spreadsheets compiling <u>three years</u> of payroll data obtained through public records requests. R. Doc. 1-11 at 3, Ex. C. Thus, the tipster (Mr. Gallagher) presented opinions based on fully disclosed facts (spreadsheets of data). As a result his words are not actionable, and the claims against him should be dismissed.

4. **The Claims against Mr. Gallagher should be dismissed because they are not supported by supplemental jurisdiction.**

This Court may also dismiss the claims against Mr. Gallagher under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Federal court subject matter jurisdiction over state law claims exists when there is a shared nucleus of operative facts between the federal and state claims. 28 U.S.C. 1367(a); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Here, Plaintiff's First and Fourteenth Amendment claims relating to his termination from the NOPD invoke this Court's federal question jurisdiction; however, Mr. Gallagher's OIPM complaint alleging this misconduct is not sufficiently connected to these claims to support supplemental jurisdiction.

Plaintiff admits as much in his Complaint—after the investigation pursuant to Mr. Gallagher's OIPM complaint was complete, Mr. Cockerham alleges, "despite Transcendent's finding of no wrongdoing, NOPD's public integrity bureau notified Plaintiff Cockerham that he must remain on administrative reassignment, pursuant to Defendant Kirkpatrick/s orders." R. Doc. 1, p 8-9. The Complaint then goes on to list pages of allegations asserting malicious misconduct on behalf of Defendant Kirkpatrick and the NOPD—*none of which involves Mr. Gallagher*. R.Doc. 1, p. 9-15. Instead, these allegations involve a totally separate investigation into whether Plaintiff was the source of anonymous complaints. They do not stem from Mr. Gallagher's July 2024 complaint to OIPM. Because there is no shared common nucleus of operative facts, the claims against Mr. Gallagher should be dismissed.

5. **This Court should dismiss the claims against Mr. Gallagher because Plaintiff does not claim to have served Mr. Gallagher within 90 days, and he failed to serve Mr. Gallagher at all.**

Plaintiff's claims should also be dismissed due to his failure to make legally sufficient service upon Mr. Gallagher. Fed R. Civ. P. 12(b)(5). This is crucial, because without proper service, this Court has no personal jurisdiction to resolve any claims against Mr. Gallagher. *Omni Cap. Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, (1987) ("Before a federal court may exercise

personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444-45, (1946) ("[S]ervice of summons is the procedure by which a court . . . asserts jurisdiction over the person of the party served."); *Dave v. O'Carroll,* 2023 U.S. App. LEXIS 9220, at *4-5 (5th Cir. Apr. 18, 2023) ("That lack of service . . . means the court never held personal jurisdiction over him.")

Here, Plaintiff's service has two defects: first, he does not even claim to have served Mr. Gallagher within the time allotted by the Federal Rules of Civil Procedure, and second, he failed to serve Mr. Gallagher by any of the requisite methods prescribed by Federal Rule of Civil Procedure 4.

First, Plaintiff failed to serve Mr. Gallagher within a timely manner. Federal Rule of Civil Procedure 4(m) requires "dismissal on motion or sua sponte for such failure [to serve] within 90 days after filing of the complaint unless good cause is shown." *Crosswell v. Rodriguez*, 120 F.4th 177, 190 (5th Cir. 2024), *citing Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017) ("Rule 4(m) requires dismissal if a defendant is not served within 90 days after the complaint is filed, unless the plaintiff shows good cause for the failure."). Here, the Complaint was filed March 26, 2026. R. Doc 1. Pursuant to FRCP 4(m), Plaintiff then had 90 days to serve Mr. Gallagher by June 24, 2026. Plaintiff's alleged "service," however, did not occur until July 13, 2026. R. Doc. 15-1. Service is thus insufficient because it was not only untimely as well but nearly three weeks past the service deadline. If a plaintiff is having trouble serving a defendant, his remedy is to seek leave of court for an extension of the service deadline. *E.g., David v. Port Allen Seafood and More, Inc.*, 25-cv-00824, R. Doc. 12 (M.D. La., Dec. 16, 2025) (on plaintiff's motion, granting sixty-day extension of deadline to serve). Here, Plaintiff neither served Mr. Gallagher within ninety days nor sought leave for an extension.

Second, service upon a defendant is improper unless it is accomplished through one of the methods contained in Federal Rule of Civil Procedure Rule 4(e)(2). These methods consist of (1) delivering a copy of the summons and the complaint to the individual personally; (2) leaving a copy of each at the individual's dwelling or usual abode with someone of suitable age or discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. *See* Fed. R. Civ. P. 4(e)(2)(A)(B)(C). In this case, Plaintiff's "service" consisted of leaving the service documents on Mr. Gallagher's mailbox—without making any actual contact with Mr. Gallagher or anyone else of "suitable age or discretion."[16] Because Plaintiff failed to actually personally serve Mr. Gallagher, he failed to effectuate proper service.

Plaintiff disputes these facts—arguing that the process server actually *did* personally serve Mr. Gallagher at his home. In support of this allegation, Plaintiff cites to the sworn return, a photograph of Mr. Gallagher's closed door (allegedly taken by the process server at the time of service), and the fact that the process server accurately described Mr. Gallagher's physical appearance. R. Doc. 16-1. But this "evidence" corroborates Mr. Gallagher's version of events. The investigation report provides a photo take "at the time of service" – but it shows a closed door. R. Doc. 16-3 at 2. The closed door is consistent with Mr. Gallagher's testimony that the service documents were left at his front door, not with him personally.[17] Moreover, the fact that the process service described Mr. Gallagher's appearance is not determinative; ABC Legal's service submission page requires for a physical description of the target of service.[18] And notably, ABC

[16] *See* R. Doc. 16-3 – Process server investigative report; Ex. 1 – Mr. Gallagher's affidavit.
[17] Ex. A (Mr. Gallagher's affidavit).
[18] *ABCLegal.com (*last visited August 28, 2026), https://secure.abclegal.com/abc/customer/order/service?hsCtaTracking=be0c3613-aa8d-4669-ab75-e60d3bc635d9%7Cd58138fa-7769-46d7-b613-d4677021c70b.

Legal tried to contact the process server about the problem, and could not even reach him. R. Doc. 16-3 at 2 ("ABC attempted to contact the process server to obtain a statement regarding the alleged complaint. A response from the process server was not received.")

Mr. Gallagher absolutely disputes Plaintiff's allegations regarding service and is prepared to testify to the service failure. The fact that service was not properly effected is supported not only by Mr. Gallagher's sworn affidavit but also supported by documentary evidence. On July 13 at 3:49 p.m., Mr. Gallagher sent a contemporaneous email to his counsel in another matter alleging that the service documents "showed up *on my mailbox* today."[19] This contemporaneous account of improper service, coupled with the sworn affidavits, is sufficient to rebut Plaintiff's allegations.

If, however, this evidence is insufficient to resolve the matter, Mr. Gallagher will make himself available at an evidentiary hearing to determine whether service was properly completed.

## CONCLUSION

A plain reading of the facts alleged in the Complaint demonstrates that Mr. Gallagher is not a proper Defendant for Plaintiff's claims. The Complaint does not allege any viable claims against Mr. Gallagher, and the Complaint and its supporting exhibits show that Mr. Gallagher is not the cause of Plaintiff's alleged injuries. Even if there were well-plead claims against Mr. Gallagher, they would be barred by the conditional privilege and the doctrine of opinion based on disclosed facts. And finally, Plaintiff does not even claim to have served Mr. Gallagher within the time limit set out by the rules. This Court has multiple ways to dismiss these claims against Mr. Gallagher. For the foregoing reasons, Mr. Gallagher respectfully requests this Court grant this motion to dismiss, with prejudice.

---

[19] Ex. A (Gallagher declaration); Ex. B (Email).

Respectfully submitted:

*/s/ William Most*

WILLIAM MOST (La. Bar No. 36914)
Most & Associates
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Tel: (504) 509-5023
Email: williammost@gmail.com
*Counsel for Defendant, Skip Gallagher*