UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHAD DURAN COCKERHAM | CIVIL ACTION NO. 2:26-CV-00647 |
| VERSUS | SECTION "J" |
| CITY OF NEW ORLEANS,<br>ANNE E. KIRKPATRICK,<br>NEW ORLEANS POLICE DEPARTMENT,<br>CHARLES "SKIP" GALLAGHER, ET AL. | JUDGE CARL J. BARBIER<br><br>MAGISTRATE JUDGE DONNA<br>PHILLIPS CURRAULT |
| FILED: ______________________________ | ______________________________<br>DEPUTY CLERK |

**PLAINTIFF'S OPPOSITION TO DEFENDANT CHARLES "SKIP" GALLAGHER'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1), 12(B)(5) AND 12(B)(6)**

MAY IT PLEASE THE COURT:

Presently before this Honorable Court is the Motion to Dismiss filed by Defendant Charles "Skip" Gallagher's Motion to Dismiss ("Gallagher"). [R. Doc. 17]. This baseless motion should be denied because it attempts to resolve disputed facts, weigh competing evidence, determine Gallagher's credibility, and secure findings concerning his knowledge, intent, and good faith at the pleading stage. Those issues cannot properly be decided under Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), or 12(b)(6).

## INTRODUCTION

The matter before this Honorable Court concerns Plaintiff Cockerham's tort claim against Gallagher for his slanderous, unfounded remarks in the public forum that Plaintiff was engaged in a "long history of payroll fraud" during Cockerham's employment as a detective with the New Orleans Police Department ("NOPD").asks Gallagher asks this Court to dismiss all claims against him with prejudice based upon a motion that repeatedly requires the Court to decide disputed facts in Gallagher's favor, accept Gallagher's characterization of his own conduct and

state of mind as established fact, draw causation inferences against Plaintiff, and transform a conditional privilege into an absolute immunity. The Federal Rules do not permit that result at the pleading stage.

The Complaint alleges that Gallagher repeatedly and unequivocally accused Cockerham of committing "payroll fraud," asserted that there "must have been payroll fraud," and subsequently stated that Cockerham had a "long history of committing payroll fraud." These were not cautious expressions of concern, requests for clarification, or opinions stated hypothetically. They were direct accusations that Cockerham had repeatedly engaged in criminal conduct. Gallagher's own memorandum acknowledges those statements. [R. Doc. 17-1, pp. 5, 13]. Gallagher asks this Court to determine at the pleadings stage, without any discovery, that: (1) Gallagher acted in good faith; (2) Gallagher's factual conclusions were reasonable; (3) His accusations constituted protected opinion; (4) An investigation completely severed causation; (5) His conduct was unrelated to the subsequent adverse employment events; and (6) His version of disputed service facts should be credited over the process server's sworn return, photographs taken of Gallagher's front door; and a physical description of Gallagher by the process server. Those are not appropriate Rule 12(b)(6) determinations.

More importantly, Gallagher relies upon an investigative report to which he contributed false and inaccurate statements. He admits that his factual analysis contained inaccuracies, that many of the hours he reported did not match the hours calculated under departmental guidelines, that his findings resulted from a "misunderstanding" of NOPD policy, and that his assessment "lacked technical accuracy due to his differing approach to interpreting NOPD policy." [R. Doc. 17-1, pp. 9-10; R. Doc. 1-2, p. 106]. That finding alone defeats Gallagher's effort to obtain dismissal based on a supposed absence of falsity or fault. Gallagher nevertheless asks the Court

to treat his accusation that Cockerham had a "long history of payroll fraud" as legally protected and factually justified. This accusation was repeated and attributed to Gallagher in numerous news media reports.

Plaintiff alleges Gallagher, a chemistry teacher with no demonstrated expertise in NOPD payroll administration, relied upon his own interpretation of payroll spreadsheets to accuse Cockerham of a "long history of payroll fraud." Gallagher did not interview Cockerham before making that accusation, and the professional investigation on which Gallagher now relies found that his analysis contained inaccuracies, reflected a misunderstanding of NOPD policy, and "lacked technical accuracy." [R. Doc. 17-1, pp. 9-10; R. Doc. 1-2, p. 106].

Those facts create disputes concerning falsity, fault, good faith, reckless disregard, the scope and abuse of any conditional privilege, causation and damages. They cannot be resolved by accepting Gallagher's characterization of the evidence at the pleading stage. If the Court concludes that any claim requires greater specificity, the appropriate remedy is leave to amend under Rule 15(a)(2), not dismissal with prejudice.

Gallagher's jurisdictional and service arguments likewise fail. The state and federal claims arise from an overlapping factual chronology and therefore fall within 28 U.S.C. §1367(a). Plaintiff also possesses a sworn return reflecting personal service; Gallagher's contrary account creates, at most, a factual dispute. And even if service were untimely or technically deficient, Rule 4(m) permits an extension and re-service rather than dismissal with prejudice.

## I. FACTUAL BACKGROUND RELEVANT TO GALLAGHER

### Tortious Conduct of Gallagher

Plaintiff Cockerham is a longtime detective with NOPD who, during his career, participated in numerous criminal investigations and developed a professional reputation as an

experienced and effective law-enforcement officer. The events giving rise to this litigation began when Defendant Charles "Skip" Gallagher, a private citizen and chemistry professor at the University of New Orleans, undertook his own review of Cockerham's payroll and work records and began accusing Cockerham of payroll fraud.

Evidence at trial will show that Gallagher submitted a complaint to the Office of the Independent Police Monitor ("OIPM") asserting that "there must be payroll fraud" because, in Gallagher's view, Cockerham made too much money and worked an "impossible schedule." Gallagher's accusations were not limited to raising questions about whether Cockerham's payroll records warranted review. Gallagher later communicated with the NOPD Public Integrity Bureau ("PIB") and stated unequivocally: **"Clearly officer Cockerham has a long history of payroll fraud and this 2017 spreadsheet easily identifies some egregious examples."**

Gallagher made these accusations even though he was not an NOPD payroll administrator, law-enforcement auditor, or investigator. The present record does not establish that Gallagher possessed training or experience regarding NOPD payroll administration, paid-detail policies, overtime calculations, compensable court appearances, call-back duty, overlapping reporting conventions, supervisory approval of time entries, or the distinction between hours worked and hours compensated. Gallagher treated his own interpretation of payroll spreadsheets as sufficient to accuse Cockerham of a "long history" of payroll fraud.

Gallagher's accusations were then referred into the formal investigative process. The investigative findings quoted in Gallagher's own memorandum acknowledged that Gallagher made mistaken findings, misunderstood the application of NOPD policy, utilized an approach different from the methodology employed under departmental procedures, and that his

assessment "lacked technical accuracy due to his differing approach to interpreting NOPD policy."

The report cited by Gallagher further reflects that many of the hours Gallagher identified did not match the verified hours calculated using departmental tools and guidelines. The investigators attributed those discrepancies to Gallagher's interpretation of departmental policy and his lack of access to department-approved calculation tools. Although the report expressed the view that Gallagher did not deliberately fabricate information, it simultaneously recognized that his findings were inaccurate in material respects. Thus, the report upon which Gallagher relies does not establish the truth of his accusation that Cockerham had a "long history of payroll fraud"; rather, it confirms that Gallagher's underlying analysis contained significant technical defects.

Gallagher's accusations also did not occur in isolation from the events that followed. His allegations caused Cockerham's work history, payroll records, paid-detail activity, and professional integrity to become the subject of investigation. Gallagher's OIPM complaint was transferred into the NOPD investigative process, and Cockerham remained under administrative scrutiny even after the payroll-fraud allegations were not sustained in the manner Gallagher had asserted.

The Complaint alleges that the scrutiny did not end with the payroll investigation. Cockerham remained on administrative reassignment, and additional investigations followed concerning his honesty and alleged involvement in an anonymous complaint regarding cheating on NOPD promotional examinations. Cockerham alleges that these investigations became part of a continuing course of retaliatory and disciplinary conduct that adversely affected his employment, reputation, earnings, and career. The Complaint expressly alleges that Gallagher's

negligent and/or grossly negligent false statements "spurred baseless investigations" and caused injury to Cockerham.

Cockerham further alleges that the false accusations and resulting investigative process caused significant professional and personal harm. His pleaded damages include damage to his professional reputation, emotional distress, loss of employment opportunities, lost wages and benefits, and violation of his constitutional and statutory rights. Therefore, the chronology is important. Gallagher first accused Cockerham of payroll fraud; those accusations were referred for investigation; the investigation subjected Cockerham's compensation, work practices, and credibility to scrutiny; the investigation determined that Gallagher's analysis contained inaccuracies and reflected a misunderstanding of NOPD policy; Cockerham nevertheless remained administratively reassigned; and additional disciplinary investigations thereafter continued to focus on Cockerham's honesty and professional conduct. Plaintiff alleges that Gallagher's conduct was part of the factual and temporal chain that ultimately damaged Cockerham's employment and professional reputation.

**Insufficient Service Allegation**

Defendant Gallagher argues there is also a factual dispute concerning service of process. Plaintiff initially attempted service at an incorrect address for a different Charles Gallagher. After discovering the error, Plaintiff undertook further efforts to locate the correct Gallagher and retained a professional process-serving company. The process server thereafter executed a sworn return stating that Gallagher was personally served on July 13, 2026.

Gallagher disputes personal service and contends that he instead found the litigation papers at his mailbox. His declaration states that he heard a knock at his home, did not immediately answer the door, later exited his residence, and then found two envelopes associated

with the lawsuit. His contemporaneous email likewise stated that the documents had "showed up on my mailbox."

Accordingly, the record presently contains competing factual accounts regarding service: the process server's sworn return reflecting personal service and Gallagher's subsequent denial that personal service occurred. That factual dispute further illustrates why the relief Gallagher seeks, dismissal with prejudice, is inappropriate on the present record.

## II. APPLICABLE LAW

### A. Standard under Rule 12(b)(1)

Rule 12(b)(1) permits a challenge to subject-matter jurisdiction. The party invoking federal jurisdiction bears the burden of establishing it. *See Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 487 (5th Cir. 2014). On a facial attack, the Court accepts the well-pleaded allegations as true. *Paterson v. Weinberger*, 644 F.2d 521, 524 (5th Cir. 1981). A court may base its disposition of a motion to dismiss under Rule 12(b)(1) on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Exxon Mobil Corp. v. Mudd Fam. P'ship, L.L.C.,* 2026 U.S. Dist. LEXIS 54557, (W.D.L.A.), 3/16/2026).

Courts may consider affidavits and exhibits submitted in connection with a Rule 12(b)(1) motion to dismiss. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). Once challenged proof, the plaintiff must prove by a preponderance of the evidence that the court has subject matter jurisdiction. *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986). A motion to dismiss under Rule 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claims that would entitle plaintiff to relief. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

**B. Standard under Rule 12(b)(5)**

Rule 12(b)(5) provides for dismissal of an action for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). A Rule 12(b)(5) challenge contests the way process was served. *Id*. "[O]nce the validity of service of process has been contested, the plaintiff bears the burden of establishing its validity." *Kelley v. Rogow*, 2026 U.S. Dist. LEXIS 21787 (USDC, EDLA 2/02/2026). In ruling on a Rule 12(b)(5) motion, district courts enjoy broad discretion. *Henderson v. Republic of Texas*, 672 F. App'x 383, 384 (5th Cir. 2016).

**C. Standard under Rule 12(b)(6)**

Rule 12(b)(6) tests the sufficiency of the pleading, not the merits. The Court accepts well-pleaded facts as true and asks whether they state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009). A motion to dismiss for failure to state a claim is not meant to resolve disputed facts or test the merits of a lawsuit." *Brown v. Talavera*, 2026 U.S. Dist. LEXIS 89389 (U.S.D.C., EDLA 4/22/2026) citing *Sewell v. Monroe City Sch. Bd.,* 974 F.3d 577, 581 (5th Cir. 2020).

Review generally is confined to the pleadings and attachments. Documents referred to in the complaint and central to the claim may be considered without conversion, but if the Court relies on other matters outside the pleadings, Rule 12(d) requires treatment as a Rule 56 motion and a reasonable opportunity to present pertinent material. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.,* 748 F.2d 631, 635 (5th Cir. 2014; *George v. SI Group, Inc.,* 36 F.4th 611, 619 (5th Cir. 2022).

**D. Defamation and defamatory accusations under Louisiana law**

Emanating from La. C.C. art. 2315, defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. *Kennedy*, 05-1418 at 4, 935 So.2d at

674; *Costello*, 03-1146, p. 12 (La. 1/21/04), 864 So.2d 129, 139. Louisiana recognizes four elements of a defamation claim: (1)a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Kalencom Corp. v. Shulman*, 2018 U.S. Dist. LEXIS 61350 (USDC, E.D. La. 4/11/2018). The law denotes statements as defamatory per se when the statements "accuse another of criminal conduct, or which, by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances." *Costello v. Hardy*, 864 So.2d 129, 140 (La. 2004). In such a case, the elements of falsity, fault, and injury are presumed, but may be rebutted. *Id*. Under Louisiana law, "a petitioner alleging a cause of action for defamation must set forth in the petition with reasonable specificity the defamatory statements allegedly published by the defendant." *Express Lien, Inc. v. Nationwide Notice Inc.,* No. 16-2926, 2017 U.S. Dist. LEXIS 42165, 2017 WL 1091252, *2 (E.D. La. 2017).

**E. Conditional privilege under Louisiana law**

Louisiana recognizes a conditional privilege for certain good-faith communications made on a proper occasion, to proper parties, and for a proper purpose. *Kennedy*, 935 So. 2d at 681–83. The privilege is conditional and not absolute. Its application requires consideration of whether: (1) the communication was made in good faith; (2) the speaker had a legitimate interest or duty; (3) the recipient had a corresponding interest or duty; (4) the statement was limited in scope to the legitimate purpose; (5) the occasion was proper; and (6) the communication was made in a proper manner and only to proper parties. *Id.*

A conditional privilege may be defeated by proof of actual malice or abuse. The privilege does not provide blanket immunity to a person who knowingly or recklessly makes false criminal

accusations, exceeds the legitimate scope of the occasion, or presents unsupported conclusions as established facts. Because good faith, knowledge, reckless disregard, purpose, and abuse generally turn on the circumstances and the speaker's state of mind, they ordinarily present factual questions inappropriate for resolution on a motion to dismiss.

**F. Fact versus opinion**

The First Amendment protects a statement of opinion that cannot reasonably be interpreted as stating actual facts. But merely labeling a statement an "opinion" does not make it constitutionally protected. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18–21 (1990). The relevant question is whether the statement, viewed in context, carries a provably false factual connotation. An accusation that a named person committed a particular crime ordinarily is capable of being proven true or false.

While defamation is a state law tort, the First Amendment to the U.S. Constitution and its prohibition against any law abridging freedom of speech or of the press impose constraints where public officials and public concerns are involved. *Kennedy*, 05-1418 at 6, 935 So.2d at 675. Therefore, to avoid the chilling effect and self-censorship that defamation cases invite, it falls to the court to determine in the first instance whether words fall outside the realm of protected speech. *New York Times Co. v. Sullivan*, 376 U.S. 254, 285, 84 S.Ct. 710, 11 L. Ed. 2d 686 (1964). This is the rule that has obtained and been consistently observed by the courts in Louisiana. *Costello*, 03-1146 at 13, 864 So.2d at 140 (citing *Sassone v. Elder*, 626 So.2d 345, 352 (La. 1993). ("The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is ultimately a legal question for the court."); *Fitzgerald v. Tucker*, 98-2313, p. 11 (La. 6/29/99), 737 So.2d 706,716 (quoting *Mashburn v. Collin*, 355 So.2d 879, 886-87 (La. 1977)). "[W]hen interpretation of a communication in light of the

constitutional requirements is involved, our scope of review is to examine in depth the "statements in issue" and the "circumstances under which they were made," and "to re-examine the evidentiary basis of the lower court decision in light of the Constitution." *Johnson v. Purpera*, 20-01175 (La. 5/13/21), 320 So. 3d 374, does not create a categorical exemption whenever a speaker refers to supporting information. *Johnson* was decided on summary judgment after development of an evidentiary record and involved conclusions contained in official reports prepared by the Louisiana Legislative Auditor. It does not establish that a private citizen may conclusively accuse another person of "payroll fraud" and obtain dismissal at the pleading stage merely because the citizen created or cited a spreadsheet.

**G. Supplemental jurisdiction**

In pertinent part, 28 U.S.C. § 1367(a), states that in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in that action within such original jurisdiction that they form part of the same case or controversy. Claims form part of the same case or controversy when they derive from a common nucleus of operative facts. The claims need not be identical, and supplemental jurisdiction does not require that every defendant be involved in every claim. Even when a court declines supplemental jurisdiction under § 1367(c), the ordinary disposition of state-law claims is dismissal without prejudice and not an adjudication on the merits with prejudice.

**H. Service under Rules 4(e), 4(l), and 4(m)**

Rule 4 makes clear that "plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service. Fed. R.Civ. P. (c)(1). Indeed, the obligation to locate defendant's address

and provide same to the court for issuance of summons remains with plaintiff. *Magee v. Amazon*, 2026 U.S. Dist. LEXIS 59705 (E.D. La. 3/3/2026). Rule 4(e)(2)(A) authorizes service by delivering a copy of the summons and complaint to the defendant personally.

When service is challenged, the plaintiff bears the burden of establishing valid service. *Aetna Business Credit, Inc. v. Universal Décor & Interior Design, Inc*., 635 F.2d 434, 435 (5th Cir. 1981). A signed return of service constitutes prima facie evidence of valid service and generally may be overcome only by strong and convincing evidence. *Financial Federal Credit Inc. v. Hartmann*, 2011 WL 3562132, at *4 (5th Cir. Aug. 15, 2011).

Rule 4(m) provides that, if service is not completed within ninety (90) days, the Court must dismiss the action without prejudice ***or order that service be made within a specified time***. If the plaintiff shows good cause, the Court must extend the service period. ***Even without good cause, the Court retains discretion to allow additional time***. *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996); *Millan v. USAA General Indemnity Co.,* 546 F.3d 321, 325 (5th Cir. 2008). Dismissal with prejudice is an extreme sanction and is not authorized merely because service occurred after the Rule 4(m) period.

## II. ARGUMENT

### A. The Complaint Gives Gallagher Fair Notice of the Claims Against Him.

Gallagher contends that the Complaint does not clearly identify the claims asserted against him. That contention is contradicted by the pleading itself and by Gallagher's own Motion. The Complaint specifically alleges that Gallagher made negligent and/or grossly negligent false statements that "spurred baseless investigations" and injured Cockerham. It further alleges defamatory statements, emotional injury, reputational harm, negligence/gross negligence, and interference with contractual relationships. Gallagher plainly understood the

conduct challenged: his memorandum identifies the exact two statements attributed to him and devotes extensive argument to why those statements allegedly cannot create liability. It is also noteworthy that Gallagher provided several news media interviews wherein he espoused injurious, defamatory opinions regarding Cockerham. Rule 8 requires fair notice, not perfect labeling. To the extent the Court concludes that Plaintiff should separately identify defamation or another Louisiana cause of action against Gallagher, that issue is readily cured by amendment and cannot justify dismissal with prejudice.

**B. Gallagher's Statements Are Capable of Defamation**

The two statements that Gallagher acknowledges are just the tip of the iceberg. He has also provided statements to news media which were false and defamatory regarding Cockerham. In a Fox 8 story published on July 1, 2026, titled "New Orleans Inspector General alleges NOPD officer committed payroll fraud," Gallagher "confirmed to Fox 8 "that the complaint he filed with the OIPM in 2024 about Cockerham **led to the OIG report**. That directly undercuts Gallagher's effort to characterize his conduct as wholly disconnected from the later investigative chain. See https://www.fox8live.com/2026/07/01/new-orleans-inspector-general-alleges-nopd-officer-committed-payroll-fraud.

A second Fox 8 story, published July 2, 2026, titled "Former NOPD officer sues city and NOPD watchdog over investigations and firing," again identifies Gallagher and states that Gallagher's complaint to the OIPM "triggered the probe into his timesheets." The story also says that both Gallagher and Cockerham's counsel acknowledged that the July 1 OIG report concerned Cockerham. See. https://www.fox8live.com/2026/07/02/former-nopd-officer-sues-city-nopd-watchdog-over-investigations-firing

Additionally, Gallagher has publicly discussed NOPD payroll fraud generally, and Cockerham, specifically, on WWL radio. On March 26, 2026, Gallagher appeared on Newell Normand's show to discuss Cockerham. The episode description identifies Gallagher by name and says he joined the show to discuss Cockerham as "another NOPD officer gone bad." A separate episode description says Gallagher joined to discuss Cockerham after his firing and the allegations surrounding the anonymous promotions complaint. https://www.audacy.com/podcasts/6a31745ac53f4b5c45558e68c01ea651/episodes/nopd_watchdog_dr_gallagher_says_da_williams_is_reluctant_to_prosecute_nopd_officers

Gallagher's consistent news media interviews nullify his allegations that his defamatory discussion of Cockerham was confined to the OIPM or PIB. This matters directly to his conditional-privilege argument, which depends in part on publication being limited to proper recipients for a proper investigative purpose. His own brief limits his statements to OIPM or the PIB, which he characterizes as the "proper parties." However, he fails to disclose to the Court his voluntary participation in news media interviews on public radio and print media about Cockerham. These interviews show that Gallagher is making defamatory statements outside of that protected setting.

There is also substantial evidence that Gallagher regularly uses the media to discuss alleged NOPD payroll misconduct for African American NOPD officers, who earn over $200,000.00 per year. Curiously, he does not appear to make similar allegations against Caucasion NOPD officers, who earn over $200,000 per year. In November 2025, he appeared on Newell Norman's show and spoke broadly about what he considered widespread overtime abuse and payroll fraud at NOPD. Earlier Fox 8 coverage likewise quotes Gallagher publicly accusing other African American NOPD officers of questionable timesheet practices.

https://www.fox8live.com/2022/10/28/nopd-suspends-demoted-richardson-120-days-after-fox-8-investigation-into-timesheet-irregularities. Indeed, Gallagher has exhibited a course of conduct, not merely a two-time confidential reporting to oversight agencies regarding Cockerham.

In this memorandum, Gallagher acknowledges that he stated ""there must be payroll fraud" and later stated: "Clearly officer Cockerham has a long history of payroll fraud." An assertion that a police officer has a "long history of payroll fraud" is not merely criticism or rhetoric. It conveys that the officer repeatedly engaged in intentional dishonesty relating to compensation. The statement is objectively capable of being proven true or false. Louisiana law recognizes accusations of criminal conduct as defamatory per se. The fact that Gallagher referred to spreadsheets does not change the factual character of the accusation. Even if the initial OIPM complaint was conditionally privileged, this does not automatically extend the privilege to later public media communications. The scope, content, timing, and purpose of those statements require discovery.

**C. Gallagher Has Not Established Conditional Privilege as a Matter of Law**

Gallagher argues that his communications are conditionally privileged because they were submitted to OIPM and PIB and supposedly made in good faith. That argument overlooks the nature of the privilege. The privilege is conditional, not absolute. Its application depends upon good faith, proper purpose, proper scope, proper occasion, proper recipients, and whether the privilege was abused.

Gallagher asks the Court to decide these questions in his favor because PIB later characterized him as credible. But the same investigative materials acknowledge that Gallagher's calculations contained inaccuracies, that many of his reported hours did not correspond with

verified departmental calculations, that he misunderstood policy application, and that his analysis "lacked technical accuracy."

An investigator's view that Gallagher did not deliberately fabricate information does not conclusively establish the legal question of good faith or eliminate reckless disregard. Whether Gallagher appreciated the limitations of his methodology before declaring that Cockerham had a "long history of payroll fraud" is a question requiring factual development. Accordingly, Gallagher cannot establish conditional privilege as a matter of law on a Rule 12(b)(6) motion.

**D. Gallagher's No-Duty Argument Does Not Require Dismissal of All Claims**

Gallagher argues that, as a private citizen, he owed Cockerham no negligence duty and that public policy should prevent imposition of liability upon citizens who report suspected police misconduct. Plaintiff does not contend that citizens should be liable merely because they submit good-faith complaints concerning public officials. The allegations are materially different. Plaintiff alleges Gallagher went beyond requesting an investigation and affirmatively declared that Cockerham had a "long history of payroll fraud." Moreover, Gallagher's attack upon an independent negligence theory does not dispose of claims arising from false and defamatory publications under Louisiana law. If this Court determines that Count Six does not adequately identify a separate negligence duty applicable to Gallagher, Plaintiff requests leave to amend rather than dismissal of all claims against Gallagher.

**E. Gallagher's Own Evidence Does Not Establish Absence of Breach or Fault**

Gallagher argues that PIB's credibility determination affirmatively disproves breach. But Gallagher quotes only part of the significance of that report. The same report states that inaccuracies existed, that many of Gallagher's calculations did not correspond to verified hours, that Gallagher apparently employed a less precise methodology, and that his findings stemmed

from a misunderstanding of policy. Those facts do not establish freedom from fault. At minimum, they create factual questions regarding whether Gallagher exercised reasonable care and, if the constitutional actual-malice standard applies, whether he recklessly disregarded substantial limitations in the basis for his accusation.

**F. The Independent Investigation Does Not Eliminate Causation as a Matter of Law**

Gallagher argues that Transcendent Law Group's independent investigation and the later examination-cheating investigation broke the causal chain. That argument improperly narrows Plaintiff's alleged injury to the ultimate demotion. Plaintiff alleges reputational injury, emotional harm, loss of employment opportunities, economic damages, and harm caused by the investigations themselves. Even if later NOPD conduct constitutes an independent cause of one employment decision, that would not extinguish damages already caused by Gallagher's allegedly false statements. Further, the Complaint alleges a factual sequence in which Gallagher's accusations caused Cockerham's payroll records, professional conduct, and credibility to become the subject of investigation, after which he remained administratively reassigned and additional investigations followed. Whether later investigative actions constituted superseding causes is a factual question, not a Rule 12(b)(6) issue.

**G. Gallagher's Negligent Infliction of Emotional Distress Argument Does Not Require Dismissal of Plaintiff's Emotional-Distress Damages**

Gallagher argues in a footnote that Louisiana does not recognize negligent infliction of emotional distress as an independent cause of action in these circumstances. Even assuming Gallagher is correct regarding an independent negligent infliction of emotional distress claim, that does not eliminate emotional-distress damages recoverable because of another actionable tort. Therefore, Plaintiff does not need to prevail upon a freestanding negligent infliction of emotional distress theory to recover emotional damages caused by defamatory or otherwise

actionable conduct. To the extent Count Five requires clarification, Plaintiff requests leave to amend.

**H. Gallagher's *Spurney* Argument Does Not Dispose of the Claims Against Him**

In *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 232-34 (La. 1989), the Louisiana Supreme Court recognized a limited cause of action for tortious interference with contractual relations, that applies "to a corporate officer interfering with his employer's contractual relations with third persons." *Gulf Eng'g Co., L.L.C. v. Kuhn*, 209 So3d 1029 (La. 5 Cir. 2016) citing *Miller v. Desoto Reg'l Health Sys.,* 13-6398 (La. App. 3 Cir. 12/11/13), 128 So.3d 649, 658. Gallagher argues that Louisiana's tort of intentional interference with contract under *Spurney* does not apply because Gallagher was not a corporate officer of NOPD. That argument, even if accepted, would eliminate at most one theory of recovery. It would not eliminate Plaintiff's claims arising from Gallagher's allegedly false statements, reputational injury, or other Louisiana delictual liability. Accordingly, *Spurney* provides no basis for dismissal of Gallagher from the lawsuit with prejudice.

**I. Gallagher's Statements Are Not Immunized Merely Because He Disclosed Spreadsheets**

Gallagher contends that his statements were "opinions based on disclosed facts" because he supplied spreadsheets underlying his conclusions. But the First Amendment does not create a categorical exemption for a provably false factual assertion merely because the speaker identifies supporting material which he admits he had no training, experience, or knowledge of NOPD policy to interpret. Gallagher did not merely provide spreadsheets and invite OIPM to determine whether wrongdoing occurred. He declared: "Clearly officer Cockerham has a long history of payroll fraud," after an assessment which in large part, upon information and belief, was based

upon his college students' analysis of the data. Based upon Gallagher's admittedly limited understanding, his statement asserts that fraud occurred.

Gallagher's reliance on *Johnson v. Purpera,* 320 So.3d 374 (La. 2021) is likewise misplaced procedurally. *Johnson* was decided on summary judgment after development of an evidentiary record and concerned conclusions contained in official reports of the Louisiana Legislative Auditor that were made by its former executive director. In that case, after extensive discovery, the Court held:

> [1]-Because the audits at issue addressed the administration and operations of a public agency, the Health Education Authority of Louisiana, they addressed matters of public concern, so that a claim of defamation by innuendo was unavailable to plaintiff, its former executive director; [2]-While the statements in the audit called into question plaintiff's professional competence and reputation, and could reasonably be viewed as having the effect of lowering plaintiff in the estimation of the community, the statements were opinions, or conclusions, of the auditors based on disclosed facts and, as such, were not provably false; an ordinary person reading the audit would understand that the language in question simply conveyed the auditor's professional judgments or opinions based on the facts disclosed to the auditor (and reported in the audits) during the audit process.

Here, a full record has not been developed to determine what documentation Gallagher relied upon; who performed the audit of the timesheets (him or his University of New Orleans students as part of homework assignment); what his qualifications were for reviewing the data; what NOPD policies he considered; who he interviewed to understand Cockerham's actual job duties; etc. All of this is necessary for the Court to determine whether an ordinary person reading Gallagher's audit would understand the language in question simply conveyed the auditor's professional judgment based on the facts disclosed to him (and reported in the audits) during the audit process. In sum, Gallagher seeks a merits determination before discovery concerning his methodology, understanding of NOPD policy, information known to him, and basis for

transforming possible payroll irregularities into an accusation of repeated fraud. Therefore, the doctrine does not compel dismissal.

**J. Supplemental Jurisdiction Exists Under 28 U.S.C. § 1367**

Gallagher argues that his payroll complaint is completely unrelated to Cockerham's federal constitutional claims because the later investigation concerned allegedly anonymous complaints about cheating on promotional examinations. That characterizes the facts too narrowly. Gallagher's allegations placed Cockerham's payroll, employment conduct, work history, and credibility under investigation. Cockerham remained administratively reassigned after the payroll investigation, lost hundreds of thousands of dollars in income, and subsequently became the subject of additional allegations concerning his honesty. The claims share relevant witnesses, investigative files, employment records, damages evidence, chronology, and issues concerning Cockerham's credibility and continued reassignment. Section 1367(a) does not require every defendant to participate in every federal violation. It requires claims forming part of the same case or controversy. That standard is satisfied. And, if the Court ultimately elects to decline supplemental jurisdiction, dismissal of the state claims should be without prejudice and not with prejudice. The claims against Gallagher are not prescribed, and Plaintiff will refile his claims against Gallagher at Civil District Court for the Parish of Orleans.

**K. The Evidence Regarding Service Is Disputed**

Gallagher raises two distinct service arguments: timeliness and manner of service. Plaintiff filed this civil action on March 26, 2026. [R. Doc. 1] The Clerk issued a summons for Charles Gallagher on April 2, 2026, and reissued a summons on May 8, 2026. [R. Docs. 7 and 11]. During this time, Plaintiffs had no idea where to locate Gallagher. A "Charles Gallagher" was determined to reside at 111 Wood Avenue, Metairie, Louisiana 70005. A "Charles

Gallagher" was served at that address. He called Suzette Bagneris and stated he was not the correct Charles Gallagher. At that time, Plaintiffs found a different address for "Charles Gallagher" at 404 Metairie Lawn Drive, Metairie, Louisiana 70001. This address also turned out to be the wrong address for Mr. Gallagher. Thereafter, we located and requested service at 516 Belleville Street, New Orleans, Louisiana 70114.

On July 13, 2026, an authorized private process server employed by ABC Legal at 516 Belleville Street, New Orleans, Louisiana 70114. Thereafter, the server executed a sworn proof/return of service. [R. Doc. 15]. The return identifies the date, time, and place of service and provides a physical description of the individual served. The return states that service was made upon Charles Gallagher personally. ABC Legal's contemporaneous service record includes a photograph of Gallagher's front door taken at the location and time of service. Gallagher's counsel has acknowledged in correspondence that the photograph depicts Gallagher's door and that the physical description recorded by the server matches Gallagher. [R. Doc. 16, Ex. 2]

Gallagher denied service to his attorney, who called Suzette Bagneris stating that his client received the complaint in the mail and not by process server. He also stated that his client was going to be out of the country. In response, Ms. Bagneris' office requested that ABC Legal's management investigate the service event. ABC Legal reviewed its records and confirmed its conclusion that personal service occurred. Plaintiff's counsel also informed Gallagher's lawyer that a courtesy copy of the complaint had also been mailed to Gallagher, in addition to formal service of process.

Despite being provided with evidence confirming service provided by ABC Legal, Gallagher's counsel continues to dispute the server's sworn account and has stated that the photograph instead corroborates Gallagher's denial. He also states that, given Gallagher's

popularity, a physical description of him can be found online. The dispute affects whether Gallagher's Rule 12(a) deadline has begun and whether further proceedings, including default procedures, are appropriate. Plaintiff has requested a judicial determination based on sworn and contemporaneous evidence, rather than continued informal accusations between counsel.

Gallagher provides his own declaration denying personal service and an email stating that documents “showed up on my mailbox.” He also relies upon a photograph depicting a closed door. Those materials do not conclusively negate the sworn return. A photograph of a closed door does not establish everything that occurred during the service attempt, and Gallagher’s email establishes receipt but does not conclusively determine the precise manner of delivery. Gallagher himself acknowledges that, if the evidence is insufficient, an evidentiary hearing may be required. The Court should therefore find service valid or conduct an evidentiary hearing.

Gallagher separately contends that service occurred approximately three weeks outside the initial ninety-day period. Rule 4(m), however, expressly authorizes the Court to order service within a specified additional period rather than dismiss. Gallagher received actual notice, retained counsel, and has suffered no identified prejudice from the timing. Delays were associated with locating the correct Charles Gallagher and getting him served through a private process server. Accordingly, if the Court determines that service occurred outside the original period, Plaintiff requests that the Court: retroactively extend the Rule 4(m) period through July 13, 2026, and deem service timely; or alternatively permit immediate re-service. A Rule 4(m) issue does not justify dismissal with prejudice.

**L. Gallagher’s Request for Sanctions Should Be Rejected**

Gallagher characterizes Plaintiff’s claims as frivolous and requests sanctions. That request is unsupported. The Complaint quotes Gallagher’s statements. Gallagher admits making

the statements. His own supporting materials recognize technical inaccuracies in the methodology underlying them. The parties dispute the legal effect of those statements, privilege, fault, causation, and service. A good-faith dispute concerning actionable statements does not become sanctionable merely because Gallagher believes his defenses will ultimately prevail. The request for sanctions should therefore be denied. Finally, if the Court finds any deficiency in the way Plaintiff has labeled or pleaded his Louisiana-law claims against Gallagher, Plaintiff respectfully requests leave to amend pursuant to Rule 15(a)(2). The alleged conduct is specifically identified, Gallagher plainly understands the accusations against him, and any pleading deficiency can readily be cured. Dismissal with prejudice without an opportunity to amend would therefore be unwarranted.

Respectfully submitted,

THE BAGNERIS FIRM, LLC

By: */s/ Suzette P. Bagneris*
SUZETTE P. BAGNERIS
Louisiana Bar No. 22241
EMILE A. BAGNERIS, III
Louisiana Bar No. 22240
1929 Jackson Avenue
New Orleans, Louisiana 70113
Telephone: (504) 810-3995
Facsimile: (504) 336-2198
Email: sbagneris@bagnerislawfirm.com
Email: ebagneris@bagnerislawfirm.com

-and-

DELISE & HALL

By: */s/ Bobby J. Delise*
BOBBY J. DELISE
Louisiana Bar No. 4847
Email: bdelise@dahlaw.com
JEANNETTE M. DELISE SPEGELE
Louisiana Bar No. 38187
Email: jdeliselaw@gmail.com
5190 Canal Boulevard, Suite 103
New Orleans, Louisiana 70124
Telephone: (504) 836-8000

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of September, 2026, I electronically filed the foregoing **Plaintiff's Opposition to Defendant Charles "Skip" Gallagher's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(5), and 12(b)(6)** with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF system.

I further certify that notice of this filing will be sent by operation of the Court's CM/ECF system to all counsel of record who are registered CM/ECF participants, including counsel for Defendant Charles "Skip" Gallagher.

New Orleans, Louisiana, this 9th day of September, 2026.

***/s/ Suzette P. Bagneris***
SUZETTE PEYCHAUD BAGNERIS
Counsel for Plaintiff, Chad Duran Cockerham